741 A.2d 1221

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Raymond MARTORANO, Appellee.**

**Commonwealth of Pennsylvania, Appellant,**

v.

**Albert Daidone, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 1998.

Decided Nov. 10, 1999.

Reargument Denied Dec. 27, 1999.

534

Catherine Marshall, Hugh J. Burns, Jr., Philadelphia, for the Com.

F. Emmett Fitzpatrick, for Raymond Mortorano.

Thomas Colas Carroll, Philadelphia, for Albert Daidone.

Before FALHERTY, C.J., and ZAPPALA, CAPPY., CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

The Commonwealth appeals an Order of the Superior Court that reversed an Order of the Court of Common Pleas of Philadelphia County (trial court) denying Raymond Martorano and Albert Daidone's (collectively, Appellees) Motions to Dismiss on double jeopardy grounds. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

On July 31, 1984, after an extremely lengthy, highly publicized jury trial, Appellees were convicted of first degree murder and criminal conspiracy in the killing of union organizer John McCollough. Evidence from the trial established that Appellees recruited Willard Moran to kill McCullough, and that they planned the execution, assisted in its preparation, and helped Moran flee from the murder scene. The jury deadlocked in the penalty phase, and the trial court imposed a sentence of life imprisonment.

On direct appeal, the Superior Court reversed Appellees' convictions and granted Appellees a new trial on the ground of pervasive prosecutorial misconduct, including blatantly disregarding the trial court's evidentiary rulings, disparaging the integrity of the trial court in front of the jury, and repeatedly alluding to evidence that the prosecutor knew did not exist. On remand, Appellees filed Pre-trial Motions to Dismiss based

on the Double Jeopardy Clauses of the Pennsylvania and United States Constitutions. They argued that the extensive prosecutorial misconduct in the first trial barred a retrial. The trial court denied the motions, but on appeal the Superior Court reversed, holding that a retrial would constitute double jeopardy.

## DISCUSSION

In this appeal, the Commonwealth argues that the Superior Court erred in applying *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), to bar retrial on double jeopardy grounds where the alleged prosecutorial misconduct involved neither the intentional concealment of exculpatory evidence nor over-reaching designed to provoke a mistrial. We disagree.

Prior to the United States Supreme Court's decision in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), this Court followed federal law in recognizing two types of prosecutorial misconduct that would implicate double jeopardy principles:

> First there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. [Citing *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976)]. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. [Citing *Lee v. United States*, 432 U.S. 23, 32, 97 S.Ct. 2141, 2147, 53 L.Ed.2d 80 (1977); *Dinitz*, 424 U.S. at 611, 96 S.Ct. at 1081–82]. In contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and cannot be condoned. It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against.

*Commonwealth v. Starks*, 490 Pa. 336, 341, 416 A.2d 498, 500 (1980). In *Kennedy*, though, the United States Supreme Court appeared to limit the scope of federal double jeopardy protection, holding that, "the circumstances under which . . . a

defendant [who has successfully moved for a mistrial] may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091.

This Court initially followed the new *Kennedy* standard, declaring in *Commonwealth v. Simons,* 514 Pa. 10, 16, 522 A.2d 537, 540 (1987), that, "henceforth double jeopardy will attach only to those mistrials which have been intentionally caused by prosecutorial misconduct." The Court in *Simons,* however, expressly acknowledged this Court's ability to "establish greater protection for our state citizens than provided by the United States Supreme Court." *Id.* Five years later in *Smith,* the Court did just that.

The procedural history of *Smith* is similar to the case at bar. Smith was convicted at his first trial, and on appeal this Court reversed and remanded due to the erroneous admission of hearsay testimony. Prior to retrial, Smith filed a Motion to Dismiss, alleging that the Commonwealth had committed misconduct in withholding exculpatory evidence, and therefore a retrial would amount to double jeopardy. The trial court denied the motion, and the Superior Court affirmed.

On appeal, this Court recognized that, "[u]nder the holding of *Commonwealth v. Simons,* ... [Smith] would not be entitled to discharge to avoid double jeopardy, for the violation was not based on a 'claim that the prosecutor intended to provoke a mistrial.'" *Smith,* 532 Pa. 177, 180, 615 A.2d 321, 322 (quoting *Simons,* 514 Pa. 10, 20, 522 A.2d 537, 542). Thus, the Court abandoned the *Simons* standard and returned to the pre-*Kennedy* rule:

We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to

prejudice the defendant to the point of the denial of a fair trial.

*Smith,* 532 Pa. 177, 186, 615 A.2d 321, 325.

■ The Commonwealth argues that double jeopardy will bar a retrial only where the factual circumstances are akin to those presented in *Smith,* i.e., only where the Commonwealth conceals exculpatory evidence and/or conceals other prejudicial misconduct. This argument is untenable.

Although it may have been the particular circumstances of the *Smith* case that prompted the Court to re-evaluate its decision in *Simons,* there is no doubt that the Court intended the *Smith* rule to be one of general application. Indeed, the *Smith* rule represents nothing more than a return to the standards that this Court utilized prior to *Kennedy,* which plainly applied in circumstances far different from those in *Smith. See, e.g., Commonwealth v. Virtu,* 495 Pa. 59, 432 A.2d 198 (1981) (prosecutor's bad faith attempt to force defendant to assert his Fifth Amendment privilege in front of the jury was grounds for barring retrial). Furthermore, we find no language in *Smith* to indicate that concealment of evidence is the only type of prosecutorial misconduct that may be "intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." To the contrary, the holding of *Smith* appears to be deliberately nonspecific, allowing for any number of scenarios in which prosecutorial overreaching is designed to harass the defendant through successive prosecutions or otherwise deprive him of his constitutional rights.

■ The prosecutorial misconduct in the case at bar clearly meets the *Smith* standard. Here, the prosecutor acted in bad faith throughout the trial, consistently making reference to evidence that the trial court had ruled inadmissible, continually defying the trial court's rulings on objections, and, in a tactic that can only be described as Machiavellian, repeatedly insisting that there was fingerprint evidence linking Appellees to the crime when the prosecutor knew for a fact that no such evidence existed. *See Commonwealth v. Martorano and Dai-*

*done,* 453 Pa.Super. 550, 555–59, 684 A.2d 179, 182–84 (1996) (describing numerous instances of prosecutor's misconduct). While such misconduct does not involve concealment of evidence as in *Smith,* it nonetheless evinces the prosecutor's intent to deprive Appellees of a fair trial; to ignore the bounds of legitimate advocacy; in short, to win a conviction by any means necessary. This is precisely the kind of prosecutorial overreaching to which double jeopardy protection applies.

■ We agree with the Superior Court that, " 'a fair trial is not simply a lofty goal, it is a constitutional mandate,' . . . [and][w]here that constitutional mandate is ignored and subverted by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity." *Commonwealth v. Martorano and Daidone,* 453 Pa.Super. 550, 559–60, 684 A.2d 179, 184 (1996) (citation omitted). Accordingly, we affirm the Order of the Superior Court and discharge Appellees on double jeopardy grounds.

Justice SAYLOR files a Dissenting Opinion in which Justices CASTILLE and NIGRO join.

SAYLOR, Justice, dissenting.

In this case, the majority applies the broad holding of *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992), to prohibit the retrial of criminal defendants in cases in which the prosecutor's conduct is deemed by the reviewing court to be intentional and egregious. Because, in my view, such a rule lacks sufficient definition to serve as a workable standard and fails to afford appropriate weight to public interests, I respectfully dissent.

Both the United States and Pennsylvania constitutions forbid placing individuals twice in jeopardy for the same offense.[1]

---

**1.** The double jeopardy provision in the Pennsylvania Constitution closely tracks its federal counterpart. The Pennsylvania double jeopardy provision in article I, section 10 provides that "[n]o person shall, for the same offense, be twice put into jeopardy of life or limb." The Fifth Amendment to the United States Constitution similarly provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."

Nevertheless, it has long been the general rule that neither the reversal of a conviction on appeal, nor the cessation of a trial by reason of a mistrial, bars the subsequent retrial of a criminal defendant. *See generally United States v. Dinitz,* 424 U.S. 600, 609, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976); *United States v. Ball,* 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).[2] Thus, although a defendant is guaranteed freedom from prosecution after the completion of a trial untainted by prejudicial error, he is not guaranteed such a proceeding in the first instance. *Lockhart v. Nelson,* 488 U.S. 33, 38, 109 S.Ct. 285, 289–90, 102 L.Ed.2d 265 (1988). This precept recognizes the burden of withstanding serial trials; however, the defendant's interest in freedom from successive prosecution is subordinated to the community's strong interest in the enforcement of its criminal laws. *See generally United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). This fundamental balance between the interests of criminal defendants and those of society forms the core of the federal double jeopardy jurisprudence. *See, e.g., id.*

In the mistrial context, the United States Supreme Court recognized an exception to the general rule permitting retrial in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). Although a defendant's motion for mistrial generally removes any double jeopardy bar, *see Dinitz,* 424 U.S. at 611, 96 S.Ct. at 1081, the Supreme Court in *Kennedy* found that reprosecution would be prohibited in certain cases where the government acts with wrongful intent beyond the mere desire to convict. The Court defined the standard of misconduct required to invoke double jeopardy as follows:

2. Exceptions to this rule, which are not relevant in this case, exist in instances in which the defendant's conviction is reversed on the ground that the evidence was insufficient to sustain the jury's verdict, *see Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978), and where the trial is terminated over the objection of the defendant. *See United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824) (establishing the principle that, where the trial court grants a mistrial on its own motion or that of the prosecution, retrial is permitted only where there is a manifest necessity for discontinuance of the initial proceeding).

Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Kennedy,* 456 U.S. at 676, 102 S.Ct. at 2089.[3]

In adopting this standard, the Supreme Court applied the central double jeopardy equation, balancing the competing interests of the defendant and the public. In this context, the Court viewed the defendant's primary interest as the right to have his fate determined by the first tribunal.[4] The *Kennedy* holding quite properly prevents prosecutors from subverting a defendant's double jeopardy interests by manipulating the mistrial rules to avoid a probable acquittal while retaining the possibility of a subsequent conviction. At the same time, the holding attaches substantial and appropriate weight to the public interest in fair trials ending in a just adjudication, and provides courts with a manageable standard to implement the pertinent constitutional principles. *See Kennedy,* 456 U.S. at 675, 102 S.Ct. at 2089 (stating that "[i]nferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system").

In *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992), this Court imposed a bar to subsequent prosecution in certain cases outside the mistrial context, utilizing the framework of the Pennsylvania Constitution to support an incremental departure from the principles articulated in *Kennedy.* The precise issue in *Smith* was whether double jeopardy bars retrial for "intentional prosecutorial misconduct designed to secure a conviction through the concealment of exculpatory evidence[.]" *Id.* at 179, 615 A.2d at 322. The mandate prohibiting retrial in such circumstances is justified, in partic-

**3.** Although *Kennedy* was a plurality opinion, Justice Powell filed a concurring opinion in which he expressed his agreement with the standard articulated in the lead opinion. *See Kennedy,* 456 U.S. at 680–81, 102 S.Ct. at 2091–92 (Powell, J., concurring).

**4.** This interest should be distinguished from the defendant's interest in a fair trial, which generally is protected, not by the retrial bar, but by the availability of a mistrial or appellate reversal.

ular, based upon the reasoning expressed by Mr. Justice Flaherty, now the Chief Justice, in his concurring opinion in *Commonwealth v. Simons,* 514 Pa. 10, 522 A.2d 537 (1987). In *Simons,* the Chief Justice stated:

> Concerning as it does the alleged *concealment* of information which was necessary to the truth-determining process, the alleged misconduct, even if proved, could well never satisfy the federal standard, as concealment will always negate any "intent to goad the defendant to request a mistrial." The intent of concealment, indeed its essence, is that the defendant would never know the facts and, thus, would not base any claim for relief on those facts.

> \* \* \*

> Should the Commonwealth's concealment of necessary information vitiate the double jeopardy protection afforded by our constitution? I think not. As Judge Del Sole opined below, "I find no functional difference between intentional misconduct, engaged in by the prosecution in order to avoid an acquittal by causing a mistrial and intentional misconduct, engaged in by the prosecution in concealing evidence, which results in a guilty verdict. In either case, the conduct of the prosecution once established, places the defendant twice in jeopardy for the same crime."

*Id.* at 23, 522 A.2d at 544 (Flaherty, J., concurring) (citations omitted; emphasis in original). On its narrow holding, *Smith* represents a logical and natural extension of *Kennedy* and maintains the essential equilibrium between the interests of criminal defendants and the public.[5]

**5.** Indeed, the federal courts have made similar observations about the appropriateness of applying a bar to reprosecution in cases involving covert activity by the prosecution. For example, in *United States v. Wallach,* 979 F.2d 912 (2d Cir.1992), *cert. denied,* 508 U.S. 939, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993), the court stated that:

> [i]f any extension of *Kennedy* beyond the mistrial context is warranted, it would be a bar to retrial only where the misconduct of the *prosecutor is undertaken, not simply to prevent an acquittal, but to* prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct. . . . Indeed, if *Kennedy* is not extended to this limited degree, a prosecutor appre-

The Court in *Smith*, however, framed its ultimate holding in broad terms, facially expanding double jeopardy protections under the Pennsylvania Constitution to circumstances in which the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. Since the holding of the case, as in any case, must be read against its facts, *Smith* itself would not be controlling for purposes of this broader statement; it is the majority's decision in the present case that gives the broad holding of *Smith* the force of law.

There are several reasons why I believe that a double jeopardy standard focusing upon the prosecutor's generalized culpability as it relates to fairness lacks appropriate constraints. First, the rule, taken on its terms, would appear to encompass most acts of prosecutorial misconduct. Since nearly every activity of a prosecutor who has embarked upon a criminal prosecution can be viewed as intended to prejudice the defendant, when such actions are ultimately deemed to have eroded the fairness of the trial, they will necessarily satisfy the intent requirement of the majority's test. Thus, a broad range of defendants in cases involving prosecutorial misconduct will be candidates for immunity from subsequent prosecutions; their motions for application of the double jeopardy bar can be expected; and it is highly likely that reviewing courts will have differing interpretations as to whether application of the bar is warranted, thus resulting in uneven application.[6] The majority's double jeopardy standard may

> hending an acquittal encounters the jeopardy bar to retrial when he engages in misconduct of sufficient visibility to precipitate a mistrial motion, but not when he fends off the anticipated acquittal by misconduct of which the defendant is unaware until after the verdict. There is no justification for that distinction.
>
> *Id.* at 916.

**6.** As an example, the Commonwealth cites to *Commonwealth v. Moose*, 424 Pa.Super. 579, 623 A.2d 831 (1993), *appeal denied*, 538 Pa. 613, 645 A.2d 1317 (1994), *cert. denied*, 513 U.S. 1060, 115 S.Ct. 672, 130 L.Ed.2d 605 (1994), in which the Superior Court rejected the defendant's attempt to invoke the double jeopardy clause in a case in which this Court previously had characterized the prosecution's tactics as "villainy." *See Commonwealth v. Moose*, 529 Pa. 218, 228, 602 A.2d 1265, 1270 (1992).

also have the practical effect of adversely impacting the interests of some criminal defendants—a trial judge may become hesitant to grant defense motions for mistrial, knowing that the double jeopardy bar will likely preclude retrial. *See Kennedy,* 456 U.S. at 676, 102 S.Ct. at 2089–90.

Most important, however, I believe that the standard imposed by the majority fails to attach sufficient weight to the legitimate interests of the community. When a defendant is provoked into moving for a mistrial, he is deprived of his right to continue a trial before a particular tribunal because of misconduct specifically intended to deprive him of that very right. In such cases, it is appropriate for the public's interest in the enforcement of the criminal laws to yield to the interest of the defendant that was subverted. The same can be said when the government conceals or withholds exculpatory evidence, which can be viewed as the functional equivalent of this form of deprivation. However, when the aim of the prosecutor is not so specific, it is the defendant's and the community's interest in a fair trial that is primarily affected, and, applying the double jeopardy equation, a new trial represents the appropriate remedy.

In my view, the public interests in fair trials designed to end in just judgments, and in the enforcement of the criminal laws, are simply too important to be subordinated to a vaguely defined concept hinged upon a prosecutor's general misconduct alone. Application of the *Kennedy* standard, supplemented by the narrow holding of *Smith,* would provide a workable, practical standard for judges to apply in determining whether the double jeopardy clause prohibits a subsequent prosecution, thus enabling courts to guarantee the constitutional rights of criminal defendants without diminishing society's interest in justice.[7]

In the present case, there is no question that the district attorney engaged in a pattern of misconduct which served to

---

**7.** While prosecutorial misconduct cannot be condoned, there are remedies available to the court, such as contempt or disciplinary proceedings, to penalize recalcitrant attorneys without penalizing the public as a whole.

deprive Appellants of a fair trial—indeed, it is for this reason that their convictions were reversed. There is, however, no factual finding by the trial court that the district attorney intended to provoke a mistrial or engaged in covert activity. Thus, on this record, I would not hold that double jeopardy bars retrial.

Justice CASTILLE and Justice NIGRO join this dissenting opinion.