**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**James Phillip MINNIS, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 19, 2013.
Filed Jan. 9, 2014.

---

Elliott J. Segel, Erie, for appellant.

Robert A. Sambroak, Jr., Assistant District Attorney, Erie, for Commonwealth, appellee.

BEFORE: BENDER, P.J., FORD ELLIOTT, P.J.E., BOWES, GANTMAN, DONOHUE, ALLEN, LAZARUS, OTT and WECHT, JJ.

OPINION BY DONOHUE, J.:

■ Appellant, James Phillip Minnis ("Minnis"), appeals from the January 18, 2012 order denying his motion to dismiss the charges against him on double jeopardy grounds.[1] We reverse and remand, and in doing so, we overrule *Commonwealth v. Constant*, 925 A.2d 810 (Pa.Super.2007), *appeal denied*, 594 Pa. 675, 932 A.2d 1285 (2007).[2]

The trial court summarized the pertinent factual and procedural history:

A jury found the defendant guilty of sexually abusing his girlfriend's daughter, T.K., who was between the ages of eight to eleven years old during the time of the alleged assaults. The offenses allegedly occurred at her residence that [Minnis] shared with the alleged victim's mother and her siblings, as well as [Minnis'] two daughters. Among the witnesses who testified at trial were the alleged victim, Michelle Peterson of the Children's Advocacy Center, and Rhonda Henderson, R.N. [ ('Henderson') ], a forensic nurse examiner. Henderson had examined T.K. and concluded to a reasonable degree of medical certainty that T.K. had suffered both vaginal and rectal injuries. On February 12, 2008, [Minnis] filed a post-sentence motion requesting a new trial and reconsideration of sentence. On February 4, 2008, [Minnis] was sentenced to an aggregate sentence of 192 to 304 months of incarceration for committing involuntary deviate sexual intercourse upon the minor, T.K. He was also found to be a sexually violent predator. On February 13, 2008, the post-sentence motion was denied.

[Minnis] took a timely appeal and the judgment of [sentence] was affirmed by the Honorable Superior Court on September 29, 2009. In 2010, the Erie County District Attorney had reason to believe that a number of Henderson's examinations and testimony were unreliable. It alerted the Court. After conducting an extensive investigation of Henderson's activities, the District Attorney sent notices to defendants (including [Minnis]) whose cases involved Henderson. As a result, a number of defendants were afforded new trials.

On September 10, 2010, [Minnis] filed a counseled petition for post-conviction relief seeking a dismissal of all the charges or in the alternative, a new trial. After review of the petition and the Commonwealth's response, on September 21, 2010, this Court granted PCRA [3] ] relief in the nature of a new trial.

1. An appeal from a pre-trial order denying double jeopardy protection is final and appealable. *Commonwealth v. Orie*, 610 Pa. 552, 559, 22 A.3d 1021, 1024 (2011). The Fifth Amendment of the United States Constitution provides, in relevant part, that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. Similarly, Article I, § 10 of the Pennsylvania Constitution provides that "No person shall, for the same offense, be twice put in jeopardy of life or limb." PA. Const. art. I, § 10. Minnis offers argument under both the federal and state double jeopardy clauses.

2. We observe that the defendant in *Constant* received a writ of *habeas corpus* from the federal district court for an issue unrelated to the present appeal. *Constant v. Pa. Dep't of Corr.*, 912 F.Supp.2d 279 (W.D.Pa.2012).

3. Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546.

Subsequently, [Minnis] engaged in protracted discovery in an attempt to buttress his claim of double jeopardy based upon prosecutorial misconduct. He asserts, *inter alia*, that the Commonwealth knew of Henderson's unreliability well in advance of [Minnis'] prosecution, yet presented her testimony at his trial. After discovery was completed, this Court scheduled an evidentiary hearing for December 14, 2011. However, on December 13, 2011, this Court received a letter from the prosecution asserting that [Minnis] waived his double jeopardy claim when he requested—and was granted—a new trial.

Trial Court Opinion, 1/18/12, at 1–3.

The trial court permitted Minnis to respond to the Commonwealth's letter. After review, the court concluded that the Commonwealth's legal argument was correct. That is, the trial court concluded that Minnis waived his constitutional double jeopardy claim because he requested and received a new trial. The trial court relied on *Commonwealth v. Constant* as binding authority for that proposition. In *Constant*, the defendant received a second trial because a member of the trial court's staff made improper comments to the jury. *Constant*, 925 A.2d at 814. The defendant argued that the double jeopardy clause barred retrial where the intentional and prejudicial misconduct of judicial personnel necessitated new trial. *Id.* at 815. This Court disagreed, holding that "[i]t is firmly established that a defendant who has been convicted and upon his own motion secures a new trial may not plead double jeopardy on his second trial." *Id.* (*citing Commonwealth v. Thomas*, 448 Pa. 42, 292 A.2d 352 (1972); *Commonwealth v. Melton*, 406 Pa. 343, 178 A.2d 728 (1962)). Concluding that *Constant* was binding authority, the trial court did not conduct a hearing into the nature and extent of the prosecution's alleged misconduct. The trial court simply denied Minnis' motion. In this appeal, Minnis asks this Court to overrule *Constant* as inconsistent with other binding precedent.

We begin with a brief historical overview of the federal and state double jeopardy clauses. As of the early 1960's, the Pennsylvania double jeopardy clause protected defendants from retrial in the event that they obtained "an acquittal or its equivalent." *Melton*, 406 Pa. at 347, 178 A.2d at 730. "Until a convicted prisoner receives a sentence which can withstand attack, it may be conceived that his original jeopardy continues without interruption, and that he is therefore not put in jeopardy a second time when he receives his first valid sentence." *Id.* at 347, 178 A.2d at 731 (*quoting King v. United States*, 98 F.2d 291, 295 (D.C.Cir.1938)). The *Melton* Court simply relied on the general rule that a defendant who receives a new trial by his own request waives the protection of the double jeopardy clause. *Id.* at 346, 178 A.2d at 730; *see also Commonwealth ex rel. Patrick v. Banmiller*, 398 Pa. 163, 164–65, 157 A.2d 214, 215 (1960) ("A defendant who has been convicted and who has secured a reversal of the judgment of conviction [ ... ] cannot secure his full release. The relator, by applying for the reversal, has waived his protection against being prosecuted again which the provision against double jeopardy [ ... ] affords him."). Furthermore, our state courts historically held that the double jeopardy clause of the state constitution applied only in capital cases. *Commonwealth ex. rel. Montgomery v. Myers*, 422 Pa. 180, 182 n. 2, 220 A.2d 859, 861 n. 2 (1966), *cert. denied*, 385 U.S. 963, 87 S.Ct. 405, 17 L.Ed.2d 308 (1966).

The general rule as described in *Melton* remains in effect and applies in many cases. Where a sentence is statuto-

rily subject to appeal by the defendant or the Commonwealth, the defendant has no legitimate expectation of finality in his sentence and double jeopardy protection does not attach. *Commonwealth v. Kunish*, 529 Pa. 206, 212–13, 602 A.2d 849, 852 (1992); *Commonwealth v. Postell*, 693 A.2d 612, 614–15 (Pa.Super.1997), *appeal denied*, 550 Pa. 718, 706 A.2d 1212 (1998). Thus, for example, a defendant who successfully seeks and obtains a new trial based on an erroneous evidentiary ruling cannot complain that double jeopardy bars the new trial.

This case involves an exception to the general rule, where the second trial results from misconduct on the part of the prosecution. In *Myers*, our Supreme Court observed that the Fifth Amendment double jeopardy clause, which did not apply to states at the time, precluded retrial where the prosecution engaged in "conduct calculated to abort the proceeding in order to avoid an unfavorable verdict." *Myers*, 422 Pa. at 187–88, 220 A.2d at 863–64. The *Myers* Court also expressed its disapproval of the notion that a defendant always waives double jeopardy protection by moving for mistrial. *Id.* at 189, 220 A.2d at 864. "To hold that an accused must barter away his constitutional protection against the oppression of multiple prosecution in order to avoid the hazards of continuing with a proceeding which by hypothesis has been tainted so as to prejudice his right to a fair trial would not be consistent with the administration of justice." *Id.* The *Myers* Court concluded, however, that the prosecutor did not calculate his prejudicial remarks to prompt the defendant's motion for mistrial. *Id.* at 190, 220 A.2d at 865. Thus, the Court held that the Fifth Amendment, even if it applied to the states, would not preclude the defendant's retrial. *Id.*

Subsequently, in *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court held that the double jeopardy clause of the Fifth Amendment applied to the states through the due process clause of the Fourteenth Amendment. As described in *Myers*, the federal double jeopardy clause prohibits retrial where the prosecution attempts to provoke the defendant's motion for mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). "[T]he defendant's right to complete his trial before the first jury would be a hollow shell if the inevitable motion for mistrial were held to prevent a later invocation of the bar of double jeopardy in all circumstances." *Id.* Thus, the prosecution cannot attempt to provoke a mistrial in order to obtain "a more favorable opportunity to convict the defendant." *Id.* at 674, 102 S.Ct. 2083 (*quoting United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976)).

Post-*Benton*, the Pennsylvania Supreme Court applied the federal standard, *i.e.*, that double jeopardy protection applies where the prosecution engages in conduct intended to provoke the defendant's motion for mistrial. *Commonwealth v. Starks*, 490 Pa. 336, 341, 416 A.2d 498, 500 (1980). In addition, the Pennsylvania Supreme Court held that double jeopardy applies in the event of prosecutorial misconduct "undertaken in bad faith to prejudice or harass the defendant." *Id.* The two-part analysis of prosecutorial misconduct set forth in *Starks*, as opposed to the "intentional provocation" standard of *Kennedy*, was a matter of controversy at both the state and federal level,[4] but our

---

4. The majority and concurring Justices in *Kennedy* disagreed as to whether the "harass-

ment" standard ever existed as something distinct from the "intentional provocation" stan-

Supreme Court resolved the question beyond any doubt in *Commonwealth v. Martorano*, 559 Pa. 533, 741 A.2d 1221 (1999):

> We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

*Id.* at 537–38, 741 A.2d at 1223. Thus, the Pennsylvania Supreme Court held that the double jeopardy clause set forth in Article 1, § 10 of the state constitution provides greater protection than its Fifth Amendment counterpart. *Id.* at 537, 741 A.2d at 1222.

■ The foregoing analysis establishes that where the defendant alleges prosecutorial misconduct as a basis for double jeopardy protection, the outcome depends on the nature of the alleged misconduct. Our analysis does not turn on the procedural means by which the defendant seeks or obtains a new trial. Indeed, our Supreme Court has written that double jeopardy protection does not turn on "nice procedural distinctions." *Commonwealth v. Potter*, 478 Pa. 251, 259, 386 A.2d 918, 921 (1978). The *Potter* Court explained:

> Were the permissibility of reprosecution to be governed by a more relaxed standard where a verdict is set aside post-trial than where a mistrial is granted on motion during trial, trial judges might be led to reject the most meritorious mistrial motion … and to require, instead, that the trial proceed to its con-

clusion despite a legitimate claim of seriously prejudicial error.

*Id.* at 260, 386 A.2d at 922.

Against this backdrop, we consider *Constant*. *Constant* distinguished *Martorano* because that opinion does not indicate that the defendants moved for a new trial. *Constant*, 925 A.2d at 816. The *Constant* Court was correct in this regard, but neither does *Martorano* confirm that the defendant failed to move for a new trial. The opinion states only that the defendants obtained a new trial after direct appeal, and then filed a pre-trial motion to dismiss the charges on double jeopardy grounds. *Martorano*, 559 Pa. at 535–36, 741 A.2d at 1221. Clearly, then, an order granting a new trial does not prohibit a subsequent motion to dismiss the pending charges. Further, we observe that prosecutorial misconduct was the basis for the new trial as well as the double jeopardy motion. *Id.*

In addition, the *Constant* Court's reliance on *Melton* is unavailing, as *Melton* was decided before the federal double jeopardy clause applied to the states. As explained above, *Melton* was decided when the Pennsylvania double jeopardy clause applied only to defendants who obtained acquittals in capital cases.

The *Constant* Court also cited *Commonwealth v. Thomas*, 448 Pa. 42, 292 A.2d 352 (1972) in support of its holding. There, the defendant moved for and received a new trial because a Commonwealth expert falsified her qualifications. *Id.* at 46–47, 292 A.2d at 353. Unlike *Melton*, *Thomas* post-dates *Benton*. Thus, the *Thomas* Court was bound to apply the federal double jeopardy clause and its governing case law. Careful review of the *Thomas* opin-

dard. *See Kennedy*, 456 U.S. at 675–79, 102 S.Ct. 2083 (majority opinion; *id.* at 681–93, 102 S.Ct. 2083 (Stevens, J., concurring)). For a summary of the debate as it transpired

in Pennsylvania, *see Commonwealth v. Anderson*, 38 A.3d 828, 835–36 (Pa.Super.2011) (*en banc*).

ion reveals that the Court had no need to do so. Nothing in *Thomas* indicates that the prosecution was aware of or complicit in the expert's dishonesty. Likewise, the opinion does not indicate that prosecutorial misconduct was the basis for the defendant's double jeopardy argument. Rather, the Supreme Court explained that the Commonwealth's acquiescence in the defendant's new trial request did not trigger double jeopardy protection. *Id. Thomas* does not support the *Constant* Court's ruling.

■ In light of all the foregoing, we are compelled to conclude that the *Constant* Court erred in holding that a defendant who moves for a new trial necessarily waives any argument that double jeopardy bars a second trial. We cannot reconcile that outcome with the development of the applicable law, as expressed in *Martorano*, nor can we reconcile it with our Supreme Court's pronouncement in *Potter* that the availability of double jeopardy protection does not depend on "nice procedural dis-

tinctions." *Potter*, 478 Pa. at 259, 386 A.2d at 921. We hereby overrule *Constant*.

■ The nature and extent of the alleged prosecutorial misconduct in this case remains to be determined. The trial court permitted discovery on the matter, but ultimately declined to conduct a hearing based on this Court's opinion in *Constant*. Since *Constant* no longer represents binding authority, we will remand to the trial court for further proceedings consistent with this opinion.[5]

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

GANTMAN, J. concurs in the result.

---

**5.** We reject the Commonwealth's argument that Minnis committed a procedural misstep in seeking dismissal of the charges and/or a new trial in his PCRA petition. As set forth in *Martorano*, double jeopardy protection turns on the nature and egregiousness of the prosecutorial misconduct. *Martorano*, 559 Pa. at 537–38, 741 A.2d at 1223. The prosecution could therefore engage in misconduct that

warrants a new trial but is not sufficiently egregious to bar mistrial on double jeopardy grounds. Minnis proceeded appropriately in seeking alternative forms of relief. As explained in the main text, *Martorano* also confirms that Minnis proceeded appropriately in seeking a dismissal of charges after he was awarded a new trial.