J-A22045-18

2018 PA Super 289

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTHONY WASHINGTON :
:
Appellant : No. 1099 EDA 2017

Appeal from the Order March 2, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1210371-1993

BEFORE: BENDER, P.J.E., NICHOLS, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.: **FILED OCTOBER 24, 2018**

Appellant Anthony Washington appeals from the Order entered in the Court of Common Pleas of Philadelphia County on March 2, 2017, denying his "Motion to Preclude Retrial and Dismiss All Cha[r]ges on the Basis of Intentional Prosecutorial Misconduct, Pursuant to the Double Jeopardy Clause of the Pennsylvania Constitution and the Federal Constitution." After careful review, we affirm.[1]

_____

[1] "While an order denying a motion to dismiss charges on double jeopardy grounds is technically interlocutory, it is appealable as of right as long as the trial court certifies the motion as non-frivolous." **Commonwealth v. Lynn**, 192 A.3d 194, 196 n. 1 (Pa.Super. 2018) (*citing* Pa.R.Crim.P. 587(B)(6); **Commonwealth v. Barber**, 940 A.2d 369, 376 (Pa.Super. 2007) ("It is well settled in Pennsylvania that a defendant is entitled to an immediate interlocutory appeal as of right from an order denying a non-frivolous motion to dismiss on state or federal double jeopardy grounds.")). In the matter *sub judice*, the trial court denied Appellant's motion to dismiss on its merits and determined it was non-frivolous. **See** Trial Court Opinion, filed 7/26/17, at 3. Thus, under Pa.R.Crim.P. 587 (B)(6), this rendered the denial of Appellant's

_____
* Former Justice specially assigned to the Superior Court.

The trial court aptly set forth the procedural history and relevant facts herein as follows:

**PROCEDURAL HISTORY**

The Appellant was found guilty of first degree murder and sentenced to death on December 9, 1994. Commonwealth v. Washington, 700 A.2d 400 (Pa. 1997). The Supreme Court of Pennsylvania affirmed the conviction and death sentence on direct appeal. Id. On August 20, 2007, [Appellant] filed a motion to stay execution and to appoint counsel to represent him in a to-be-filed habeas petition, which was granted on August 23, 2007. Washington v. Beard, 2015 WL 234719 at *1 (E.D. Pa. Jan. 16, 2015).

[Appellant] filed a federal habeas petition on May 5, 2008. Id. On January 16, 2015, after an evidentiary hearing, Judge Stengel found that the Commonwealth violated both Brady[1] and Bruton[2], vacated the Appellant's conviction and sentence, and remanded the matter for a new trial. Id.

The Defender Association of Philadelphia was appointed as counsel and filed a motion/memorandum titled "Motion to Preclude Retrial and Dismiss all Cha[r]ges on the Basis of Intentional Prosecutorial Misconduct, Pursuant to the Double Jeopardy Clause of the Pennsylvania Constitution and the Federal Constitution" on July 13, 2016. The Commonwealth filed "Commonwealth's Answer to Defendant's Motion to Preclude Retrial and Dismiss All Charges on the Basis of Intentional Prosecutorial Misconduct" on August 17, 2016.[3]

A hearing on the motion was scheduled for March 2, 2017. Appellant's presence was waived by counsel. N.T. 3/2/2017, p. 3.[2] The Commonwealth and Appellant's counsel stated that both sides intended to rely on the pleadings filed in this matter and argument. N.T. 3/2/2017, p. 4-5. After consideration of the pleadings and arguments of counsel, this [c]ourt denied Appellant's motion, but found that the motion was not frivolous

_____

motion immediately appealable as a collateral order, and the instant appeal is properly before us. ***See Lynn**, **supra**.*

[2] Despite the trial court's statement to the contrary, the notes of testimony reveal that Appellant was present, sworn, and testified at the March 2, 2017, hearing. N.T. Hearing, 3/2/17, at 35.

and the denial was automatically appealable as a collateral issue. N.T. 3/2/2017, p. 32.

The Appellant filed a notice of appeal on March 29, 2017. On the same day, this [c]ourt ordered the Appellant to file a 1925(b) statement within twenty-one (21) days of the filing. On April 11, 2017, Appellant filed a request for an extension of time to file the 1925(b) statement because the notes of testimony were unavailable. Appellant requested an extension for the 1925(b) statement for twenty-one (21) days after the notes of testimony were made available. This [c]ourt granted the extension on April 13, 2017.

Notes of testimony were uploaded to the Court Reporting System on May 2, 2017. The Appellant filed a "Statement of Errors Complained of on Appeal" on June 21, 2017. Counsel for the Appellant stated that the notes of testimony were received on June 2, 2017. This [c]ourt notes that another copy of the notes of testimony was uploaded on June 1, 2017.

Appellant asserts that this [c]ourt erred in not finding that the conduct of the prosecutor was "deliberate, egregious, and was intended to prejudice the defendant and deny him a fair trial." Appellant's Statement of Errors Complained of on Appeal, page 2.

## STATEMENT OF FACTS

The following factual statement is incorporated from District Judge Stengel's opinion in Washington v. Beard, 2015 WL 234719 at *1 (E.D. Pa. Jan. 16, 2015). No additional facts were presented in the Appellant's or Commonwealth's pleadings.[4]

*a) Facts of Appellant's Trial*

On January 23, 1993, two men robbed a Save-A-Lot in the Kensington Area of Philadelphia. Id. During the course of the robbery, the emergency gate to the front of the store started to close, causing the robbers to flee. Id. They were pursued by Tracy Lawson, an unarmed security guard working at the Save-A-Lot. Id. Police Officer Gerald Smith, who was moonlighting as a security guard at an adjacent store, joined the pursuit and fired a shot at the fleeing men. Id. One of the robbers fired a shot in Lawson's direction in response. Id. Lawson was struck in the head by the bullet and died of the wound. Id.

The Appellant and Derrick Teagle were arrested and charged with robbery, murder, and related offenses. Id. Teagle gave a statement to the police before being arrested. Id. This statement

- 3 -

outlined his involvement in the robbery and named the Appellant as the other robber and as the person who shot Lawson. Id. The Appellant's name was replaced with "blank" when the statement was read to the jury at trial. Id. Neither Teagle nor the Appellant testified at trial. Id.

The identity of the shooter was a contested issue at trial. Id. at *23. Several witnesses identified Teagle and/or the Appellant as one of the robbers on the night of the shooting. Id. Two Save-A-Lot employees identified Teagle as the only person they saw with a gun the night of the robbery. Id. Officer Smith identified the Appellant as the robber who shot Lawson, both at a line-up and at trial. Id. The Appellant's then former girlfriend and her sister both testified that the Appellant admitted to being the shooter and the Appellant's brother testified that he saw the Appellant and Teagle sitting with piles of money later that night. Id.

During closing arguments, ADA Gilson used Teagle's statement in a manner which "broke" the redactions of the Appellant's name. Id. After the second break in redaction, defense counsel objected and requested a mistrial. Id. The judge admonished ADA Gilson, but denied the request for mistrial. Id. Instead, the judge gave a cautionary instruction to the jury, reminding them that Teagle's statement could not be used in determining the guilt of the Appellant and any reference to the Appellant while discussing Teagle's statement must be ignored. Id. However, ADA Gilson implicated the Appellant while referencing Teagle's statement two more times. Id. Defense counsel once again objected and requested a mistrial. Id. The judge again admonished ADA Gilson and told him he was close to having a mistrial, but instead allowed the closing argument to continue after giving another cautionary instruction to the jury. Id. The jury convicted the Appellant of first degree murder and sentenced him to death.[5] Id.

### b) *Brady* and *Bruton* Violations

Judge Stengel determined that the Commonwealth violated [Brady] by failing to turn over four documents prior to the trial. Id. Three documents were separate descriptions of the robbers from the Philadelphia Police Department. Id. In each document, the robber matching Teagle's description was described as having a gun. Id. Further, none of the documents placed a gun in the hand of the other robber. Id. The documents were attached to a motion to reconsider the Appellant's supplemental PCRA petition

on July 24, 2001. Id. It is still unclear as to how the Appellant found this evidence.

The fourth document was a police activity sheet dated February 25, 1993, showing that three witnesses to the robbery were shown a photo array. Id. The photo array included the Appellant, but no witness was able to make a positive identification. Id. However, two of these witnesses positively identified the Appellant at trial. Id. This fourth document was not produced until federal discovery was ordered. Id.

Judge Stengel concluded that the documents in the aggregate may have well been material to the Appellant's case and that there was a "reasonable probability that the disclosure of these descriptions would have changed the outcome of the trial, particularly in regard to who the jury found to be the shooter." Id. at *25.

Judge Stengel also found that ADA Gilson violated Bruton when he implicated the Appellant using Teagle's statement.[6] Id. at *14. ADA Gilson "relied on an inference that Washington was identified in Teagle's statement as one of the gun-toting robbers." Id. at *16. By ignoring the redactions, the prosecutor presented to the jury a statement where "Washington [was] featured as the other robber and, most likely, the shooter." Id. at *16.

_____

[1] Brady v. Maryland, 373 U.S. 83 (1963).
[2] Bruton v. United States, 391 U.S. 123 (1968).
[3] ADA Mark Gilson submitted the Commonwealth's answer and argued the motion before this [c]ourt. ADA Mark Gilson was also the prosecutor who tried the Appellant in 1994.
[4] Counsel for the Appellant incorporated Judge Stengel's opinion by reference in his motion/memorandum.
[5] Teagle was convicted of second degree murder and sentenced to life imprisonment.
[6] Judge Stengel also found that replacing the Appellant's name with "blank" was an improper redaction under Gray v. Maryland, 118 S.Ct. 1151 (1998). Washington, 2015 WL 234719 at *9.

Trial Court Opinion, filed 7/26/17, at 2-8.

In his brief, Appellant presents the following Statement of the Question

Involved:

Did not the court err and abuse its discretion in denying the defense motion to preclude retrial and dismiss all charges, where the prosecutorial misconduct at issue was deliberate, egregious, and was intended to prejudice [Appellant] and deny him a fair trial?

Brief for Appellant at 3. In considering this claim, we are guided by the following:

> An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is de novo[.] To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:
>
> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.
>
> *Commonwealth v. Graham*, 109 A.3d 733, 736 (Pa. Super. 2015) (citation omitted).
>
> The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article 1, § 10 of the Pennsylvania Constitution prohibit retrial where prosecutorial misconduct during trial provokes a criminal defendant into moving for a mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 679, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Commonwealth v. Simons*, 514 Pa. 10, 522 A.2d 537, 540 (1987). However, Article 1, § 10 of the Pennsylvania Constitution offers broader protection than its federal counterpart in that
>
> > the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

> ***Commonwealth v. Smith***, 532 Pa. 177, 615 A.2d 321, 325 (1992). Pennsylvania has adopted a strict remedy for intentional prosecutorial misconduct:
>
>> [U]nder Pennsylvania jurisprudence, it is the intentionality behind the Commonwealth's subversion of the court process, not the prejudice caused to the defendant, that is inadequately remedied by appellate review or retrial. By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial.
>
> ***Commonwealth v. Kearns***, 70 A.3d 881, 884–885 (Pa. Super. 2013) (footnote and emphasis omitted).

***Commonwealth v. Lynn***, 192 A.3d 194, 199-200 (Pa.Super. 2018).

"[B]ecause of the compelling societal interest in prosecuting criminal defendants to conclusion, our Supreme Court has recognized that dismissal of charges is an extreme sanction that should be imposed sparingly and only in cases of blatant prosecutorial misconduct." ***Commonwealth v. Wilson***, 147 A.3d 7, 13 (Pa.Super. 2016) (citations omitted).

Appellant generally asserts that each of the three aspects of impropriety the District Court identified as having occurred during trial and being sufficient to grant the writ of *habeas corpus* was "deliberate, egregious, and was intended to prejudice [Appellant] and deny him a fair trial." Brief for Appellant at 17 (referencing District Judge Stengel's Opinion in ***Washington v. Beard***, 2015 WL 234719 (E.D. Pa. filed Jan. 16, 2015) (unpublished memorandum)). Appellant maintains the prosecutor intentionally attempted to violate the

redaction of Teagle's statement in an effort to use it against Appellant despite repeated admonishments from the trial court. *Id*. at 22-23, 25.

In addition, Appellant contends the Commonwealth suppressed evidence in the form of the three, contemporaneous witness statements that identified Teagle as the shooter along with the police activity sheet which indicated three eyewitnesses were shown photographs of Appellant and could not identify him as a participant in the robbery. *Id*. at 23-24. Appellant posits that the aforementioned is the same type of "prosecutorial overreach" which led to the Pennsylvania Supreme Court's barring retrial in *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992) and in *Commonwealth v. Martorano*, 559 Pa. 533, 741 A.2d 1221 (1999).

In *Smith*, our Supreme Court examined the protection the Double Jeopardy Clause affords in a case involving prosecutorial misconduct pursuant to the standard set forth in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The *Smith* Court broadened the double jeopardy protection provided by the federal courts and United States Constitution requiring the prosecution to have intentionally caused a mistrial through misconduct. Specifically, the *Smith* court held:

> the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

*Smith*, 532 Pa. at 186, 615 A.2d at 325.

- 8 -

Determining that the Commonwealth intentionally had prejudiced the defendant and deprived him of a fair trial when it failed to disclose material exculpatory physical evidence, suppressed evidence while arguing in favor of the death sentence on direct appeal, and attempted to discredit a state trooper who had testified as to existence of the exculpatory evidence, the *Smith* Court held that the defendant's double jeopardy rights would be violated if he faced a new trial and discharged him.

Several years later in *Martorano*, the defendants were awarded a new trial based upon prosecutorial misconduct. On remand, the trial court denied the defendants' motion to dismiss on double jeopardy grounds; however, a panel of this Court reversed and held that a retrial would constitute double jeopardy. The Pennsylvania Supreme Court affirmed and in doing so amplified the *Smith* standard. The Supreme Court held that even absent the concealment of evidence, pervasive prosecutorial misconduct throughout the trial court proceedings had demonstrated the prosecutor's intent to deprive the defendants of a fair trial and that double jeopardy barred their retrial where the prosecutor:

> acted in bad faith throughout the trial, consistently making reference to evidence that the trial court had ruled inadmissible, continually def[ied] the trial court's rulings on objections and ... repeatedly insist[ed] that there was fingerprint evidence linking [the defendants] to the crime when the prosecutor knew for a fact that no such evidence existed.

*Martorano*, 559 Pa. at 538, 741 A.2d at 1223.

In *Commonwealth v. Minnis*, 83 A.3d 1047 (Pa.Super. 2014) (*en banc*), a panel of this Court sitting *en banc* confirmed that *Martorano* stands for the proposition that "where the defendant alleges prosecutorial misconduct as a basis for double jeopardy protection, the outcome depends on the nature of the alleged misconduct." *Minnis*, 83 A.3d at 1052. For prosecutorial misconduct to prohibit retrial on double jeopardy grounds, the prosecutor's conduct must be both egregious and pervasive. *Id.* at 1052–1053. The Commonwealth can "therefore engage in misconduct that warrants a new trial but is not sufficiently egregious to bar mistrial on double jeopardy grounds." *Id.* at 1053 n. 5 (internal citation omitted).

Herein, the trial court, relying upon *Commonwealth v. Moose*, 623 A.2d 831 (Pa.Super. 1993), *appeal denied*, 645 A.2d 1317 (Pa. 1994), *cert. denied*, 513 U.S. 1060 (1994) concluded retrial is not barred because Appellant has failed to adduce evidence of intentional prosecutorial misconduct.[3] Specifically, the trial court stated:

> Prosecutorial misconduct will only bar retrial when it is done intentionally to deny the defendant a fair trial, but not when the defendant is denied a fair trial due to gross negligence on the part of the prosecution. Commonwealth v. Kearns, 70 A.3d 881 (Pa.Super. 2013); See also, Commonwealth v. Burke, 781 A.2d

---

[3] In *Moose*, the Commonwealth failed to turn over a statement from a confidential informant until the first day of trial and never informed the defendant the informant had made a deal in exchange for his testimony. The defendant was convicted, but in light of the Commonwealth's admission on direct appeal that the informant had made an agreement with it, the defendant was granted a retrial. *Id*. at 836.

1136 (Pa. 2001); Commonwealth v. Strong, 825 A.2d 685 (Pa.Super. 2003).

Judge Stengel found that Brady was violated when four documents were not disclosed to the Appellant before trial. The Appellant provided no evidence as to what role, if any, ADA Gilson played in withholding these documents. This [c]ourt could not find that ADA Gilson intentionally withheld the document to deprive the Appellant of a fair trial absent evidence that he was aware of the existence of the documents during trial.

Judge Stengel also found that ADA Gilson violated Bruton several times during closing argument, even after being admonished by the trial judge. Appellant's counsel argued during the hearing on the motion that the Bruton violations were, in and of themselves, sufficient to show that ADA Gilson's intent was to deny the Appellant a fair trial. N.T. 3/2/2017, p. 7,8,24. While ADA Gilson obviously said the sentences that broke redaction, it is not clear that his intent was to violate Bruton and to deprive the Appellant of a fair trial.

Appellant's counsel presented no evidence to support the assertion that ADA Gilson intentionally acted to prejudice the Appellant to the point of denying him a fair trial by violating Brady and Bruton. Based on controlling authority, this [c]ourt disagreed with the assertion that the egregiousness of the violations alone proved the intent needed to bar retrial under the standard of Smith. Supra. For these reasons, this [c]ourt denied the motion to bar retrial and dismiss the charges against the Appellant.

Failing to turn over four potentially material documents in addition to four separate breaks of redaction of a non-testifying co-defendant during closing argument is highly improper and cannot be condoned. In order to bar retrial and dismiss the charges against him, however, the Appellant was required to produce evidence that ADA Gilson intentionally violated Brady and Bruton in order to deny [him] a fair trial. No such evidence was produced, therefore retrial cannot be barred Moose, supra. Therefore, the appropriate remedy is a new trial, which was ordered by Judge Stengel. Washington, 2015 WL 234719 at *27.

Trial Court Opinion, field 7/26/17, at 12-14.

Based upon our review of the entire record in this matter, we discern no error on the part of the trial court in reaching this conclusion. Appellant's assertions in his motion to preclude retrial and his claims in his appellate brief

to the contrary, our review has revealed no instance where Appellant produced evidence of the Commonwealth's intent to withhold information or to force a mistrial.

In fact, Appellant admits the admission of Teagle's statement was "arguably in good faith due to the state of the law at the time." Brief for Appellant at 20.[4] In addition, despite his claims of intentional misconduct regarding the admission of evidence, Appellant further admits that "no explanation has ever been provided or determined for [the] flagrant violation of the prosecutor's duty to provide all exculpatory evidence to the accused . . . ." *Id*. at 24. Indeed, Appellant offered no evidence at the March 2, 2017,

_____

[4] The Prosecutor's substituting the term "blank" in place of Appellant's name when redacting Teagle's statement did not violate Appellant's constitutional right to confrontation at the time of his trial in 1994. *See Commonwealth v. Rainey*, 540 Pa. 220, 232, 656 A.2d 1326, 1333 (1995) (stating trial court's instruction to the jury informing it that an individual's name had been replaced with the letter "X" was in accordance with the law). However, the United States Supreme Court later held that redactions indicated with an obvious blank, the word "delete," symbols, or other markers violate the protective rule established in *Bruton v. United States*, 88 S.Ct. 1620 (1968). *See Gray v. Maryland*, 118 S.Ct. 1151, 1155 (1998). The Pennsylvania Supreme Court thereafter determined that substituting the neutral phrase "the guy" or "the other guy" for the defendant's name is an appropriate redaction. *Commonwealth v. Travers*, 564 Pa. 362, 373, 768 A.2d 845, 851 (2001). Accordingly, as the Commonwealth states in its brief, although *Gray* was applicable to Appellant because it had been decided before his direct appeal was finalized, "*Gray* does not demonstrate prosecutorial bad faith in the redaction of co-defendant Teagle's statement at trial nearly four years earlier." Commonwealth's Brief at 18.

hearing to prove his claim that the prosecutor intentionally withheld the discovery.

Finally, while we agree with the trial court's finding that the prosecutor's statements during closing argument were highly improper and may even be considered to be grossly negligent, the record does not support Appellant's instant serious allegations that counsel intended to violate **Brady** and **Bruton** in an effort to deny Appellant a fair trial. Following his objection to the prosecutor's closing argument, defense counsel argued Appellant was entitled to a mistrial in light of the prosecutor's repeated interweaving of Appellant's name with "Blank" to suggest Teagle's confession implicated Appellant. In response, the prosecutor expressed his belief that he had used the neutral term "accomplice," and the trial court provided a curative instruction at defense counsel's request. N.T. Trial, 10/7/94, at 97-98.

The prosecutor continued his closing argument only to be interrupted again by defense counsel's objection and a second request for a mistrial. **Id**. at 99. The ensuing discussion evinces the prosecutor's apparent ignorance regarding the ramifications of his choice of words and negates Appellant's claims his actions had been intentional:

> **Mr. Gilson**: I identify him as the accomplice, Judge, as the accomplice.
> **Mr. Myers**: You identify him as an accomplice, you're referring to my client. Every time if you into Teagle's statement and want to read Teagle's statement, I don't mind, but when you start to weaving it in with my client sitting there, you have a choice of guns, where did that come from? It only came from Teagle's statement. So what do you mean the accomplice, he's the

- 13 -

accomplice here. He's the one that gave him a choice of guns. Wait a minute, that's exactly wat you're saying to the Jury. And you can't do that because you can't infer in any way that's my client.

  **Mr. Gilson**: That's absolutely, unequivocally wrong. How else am I going to refer to Derrick Teagle's statement? I have that there is [a] conspirator here. I don't want to call him the conspirator. We have been using that term in the courtroom so I'm using the—

  **THE COURT**: Listen, Mr. Gilson, I'm not going to teach you how to make a —you're on the verge of having a mistrial if you keep it up. If you want to say that two people cooperate, refer to the people identified who were taking up the place together, simultaneously, but you can't use Teagle's statement or anything contained in that statement to infer who that person is. If you do, you have violated redaction. I have two choices, separate trials or shut up. That's your—

  **Mr. Gilson**: I am not. I am not in any way, shape or form.

  **THE COURT**: Yes, you are. If you would only read your closing argument when this case is over you would understand how you're violating the rules. Go argue from the evidence or lack thereof, but don't implicate [Appellant] by Teagle's statement in any way. That's my ruling.

*Id*. at 100-01. The prosecutor complied with the trial court's directive thereafter.

Therefore, as the trial court aptly noted, the proper remedy in this situation is not a complete bar to prosecution, but a retrial, which Appellant already has been awarded. Trial Court Opinion, filed 7/26/17, at 14; *Lynn*, *supra* at 201. In light of our conclusion that Appellant has failed to demonstrate any of the alleged acts of misconduct were intended to deprive him of a fair trial, we affirm.

Order affirmed.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/18