J-A25036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANNE L. CLYBURN, | |
| Appellant | No. 2523 EDA 2013 |

Appeal from the Judgment of Sentence June 28, 2013
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0006860-2008

BEFORE:  DONOHUE, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 24, 2014**

Appellant, Anne L. Clyburn, appeals from the judgment of sentence imposed on June 28, 2013, following her non-jury conviction of one count each of theft by unlawful taking, theft by deception, receiving stolen property, theft by failure to make required disposition of funds received, and four counts each of tampering with records and unlawful use of a computer.[1] Appellant was retried after her prior conviction was vacated and the case remanded. For the reasons discussed below, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3921(a), 3922(a)(1), 3925(a), 3927(a), 4104(a), and 7611(a)(1), respectively.

The instant matter arose out of actions taken during Appellant's tenure as President and CEO of the United Food and Commercial Workers' Local 1776 Federal Credit Union (Credit Union) from August 7, 2000 through February 27, 2007. (*See* N.T. Trial, 6/27/13, at 210). This Court previously described the underlying facts as follows:

> Appellant awarded herself raises which were never approved by the [C]redit [U]nion's Board of Directors, she manipulated the line of credit on her [C]redit [U]nion issued debit card and wrote checks from the [C]redit [U]nion's operating accounts for her personal expenses. Appellant stole more than $32,400.00 from the [C]redit [U]nion's members, a [C]redit [U]nion which serves people of very modest means.

*Commonwealth v. Clyburn*, 42 A.3d 296, 297 (Pa. Super. 2012). The Commonwealth originally tried Appellant, who represented herself, in July 2010, on these charges as well as several others relating to Appellant's actions while President and CEO of the Credit Union. *See id.* at 297-98. This Court vacated Appellant's conviction and remanded, finding that her waiver of counsel was not knowing, voluntary and intelligent. *See id.* at 301-02.

After her first conviction, Appellant retained counsel, and, prior to retrial, Appellant filed multiple discovery motions, which sought discovery of various reports and minutes. (*See* Request for Pre-Trial Discovery, 3/22/12, at unnumbered pages 1-2; Second Request for Pre-Trial Discovery, 10/05/12, at unnumbered pages 1-2; Third Request for Pre-Trial Discovery, 11/14/12, at unnumbered pages 1-3; Fourth Motion for Pre-Trial Discovery,

4/11/13, at unnumbered pages 1-5; Renewed Motion for Discovery, 5/29/13, at unnumbered pages 1-2; Defendant's Sixth Motion for Discovery/Motion to Dismiss, 6/13/13, at unnumbered pages 1-7). The Commonwealth contended that it had turned over all documents in its possession to Appellant and was unable to obtain the missing reports she requested. (*See* N.T. Hearing, 5/22/13, at 7; N.T. Hearing, 6/24/13, at 13-15). The trial court granted some of the motions and denied others. (*See* Order, 4/13/12, at unnumbered page 1; Order, 11/30/12, at unnumbered page 1; Order, 4/18/13, at unnumbered page 1).

On April 11, 2013, Appellant also filed a motion to dismiss based upon a claim of prosecutorial misconduct. (*See* Motion to Dismiss, 4/11/13, at unnumbered pages 1-10). The trial court denied the motion to dismiss on April 23, 2013. (*See* Order, 4/23/13, at unnumbered page 1). Appellant filed a second motion to dismiss, based upon the Commonwealth's alleged failure to comply with court-ordered discovery on May 13, 2013. (*See* Motion to Dismiss, 5/13/13, at unnumbered pages 1-2). On May 28, 2013, the trial court denied the motion but ruled that any evidence not given to Appellant would not be admissible at trial. (*See* Order, 5/28/13, at unnumbered page 1). Appellant filed a sixth motion for discovery/third motion to dismiss, based upon a claimed discovery violation on June 13, 2013. (*See* Sixth Motion for Discovery/Motion to Dismiss, 6/13/13, at

unnumbered pages 1-7). The trial court granted in part and denied the motion in part on June 25, 2013.

On June 25, 2013, Appellant agreed to proceed with a non-jury trial in return for the Commonwealth proceeding only on those charges relating to Appellant's unauthorized use of Credit Union checks to pay for her husband's dental treatment. (*See* N.T. Hearing, 6/25/13, at 4-16).

The evidence at trial demonstrated that the Credit Union was a small business with only four employees, including Appellant. (*See* N.T. Trial, 6/27/13, at 212). As part of her job, it was Appellant's responsibility to approve and disburse payments for the Credit Union's operating expenses; she had sole authority to write checks to vendors. (*See id.* at 17-18; N.T. Trial, 6/28/13, at 4). Following Appellant's termination from the Credit Union, the directors of the Credit Union noticed certain discrepancies in the account. (*See* N.T. Trial, 6/27/13, at 19).

In July and August of 2004, Dr. Alan Kirsch had performed root canal surgery on Appellant's husband. (*See id.* at 78, 82-83). Appellant's dental insurance partially covered these procedures. (*See id.* at 8; N.T. Trial 6/28/13, at 34-35). Following the procedures, there were still monies owed to Dr. Kirsch. (*See* N.T. Trial, 6/27/13, at 101).

The Credit Union discovered that someone had made out four vendor checks, numbered 281754, 281959, 282356, and 28257 (the checks) to Dr. Kirsch. (*See id.* at 20-32). However, the check's payee lines did not match

the corresponding entries in the Credit Union's general ledger. (*See id.*). The ledger incorrectly showed that check #281754 for $418.00 was paid to Lexmark for a "Lexmark Optra new fuser," when it was in fact paid to Dr. Kirsch. (*Id.* at 201). The ledger also showed that Check #281959 for $330.54 was listed as being paid to AES/PHEEA, when it was actually paid to Dr. Kirsch. (*See id.* at 24-25). Check #282356 for $210.54 was actually payable to Dr. Kirsch, although listed as being paid to PHEAA. (*See id.* at 26-27). Lastly check #282357 for $383.75, which was paid to Dr. Kirsch, was listed as two checks in the ledger, one for $320.00 and one for $63.75, both being listed as payment for business return envelopes. (*See id.* at 28-32).

At Appellant's second trial, Credit Union employee Tina Wellington testified that the Credit Union issued two kinds of checks, member checks and vendor checks. (*See id.* at 113). All employees could write member checks (checks written to members who wanted to withdraw funds from their accounts). (*See id.*). In order to generate and print a member check, employees had to log into a computer with their teller number (which other employees knew) and their password (which was secret). (*See id.* at 113-14, 138-39, 147). Member checks had the member's name and address printed at the bottom of the check. (*See id.* at 122-23).

Wellington stated that vendor checks were different; when someone printed a vendor check, a transaction explanation would automatically print

on a different printer. (**See id.** at 131-32). The transaction explanation showed, in part, the teller number and the time the check printed. (**See id.** at 138). The vendor checks did not have members' numbers or addresses on them. (**See id.** at 122-23). The transaction explanation automatically reflected the information on the check, and the general ledger entry reflected the transaction explanation; for there to be a difference, someone had to error correct the report manually. (**See id.** at 171). Appellant was the only person authorized to print vendor checks. (**See id.** at 114-15, 125-27).

Wellington testified that she saw one of the checks on the check printer by her cubicle. (**See id.** at 121-27). She recognized the check was a vendor check because it did not have the member's information at the bottom, and since she knew that only Appellant could print vendor checks, she put the check on Appellant's desk. (**See id.** 114-15, 122-23, 125-27).

Rita Hartman, the secretary at Dr. Kirsch's office, testified that Appellant's insurance had reached its maximum limit prior to paying fully for the root canals. (**See id.** at 76, 103). Hartman stated that she would have sent a bill to Appellant's husband when the insurance maxed out. (**See id.** at 104). Hartman explained that, in her experience, "[e]very insurance company sends the patient a copy of what is being paid." (**Id.** at 99). When she applied the credit union vendor checks to Appellant's husband's

account, the account was paid in full, without any overpayment or underpayment. (*See id.* at 101).

After presenting the testimony of character witnesses, (*see id.* at 189-208), Appellant took the stand on her own behalf. Appellant denied ever writing checks to Dr. Kirsch using the Credit Union's money. (*See id.* at 233; N.T. Trial, 6/28/13, at 17). On cross-examination, Appellant stated that she believed another employee at the Credit Union, in collaboration with individuals at the Credit Union's benefits' group, conspired to frame her by writing the unauthorized checks. (*See* N.T. Trial, 6/28/13, at 21-33).

Immediately following trial, the trial court convicted Appellant of the aforementioned offenses. (*See id.* at 56). Upon agreement of counsel, the trial court sentenced Appellant to an aggregate term of not less than six nor more than twenty-three months of incarceration to be followed by three years of probation, to be reduced to two years of probation if Appellant made full restitution. (*See id.* at 58-61). The trial court gave Appellant credit for time served, resulting in her immediate parole. (*See id.*).

On July 3, 2013, Appellant filed timely post-sentence motions, which the trial court denied on August 9, 2013. The instant, timely appeal followed. On September 6, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On September 13, 2013, Appellant filed a timely Rule 1925(b)

statement. On October 24, 2013, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

1. Were the verdicts for four counts of theft [Count 2 - 3921(a), Count 4 - 3922(a), Count 6 - 3925 and Count 10 - 3927(a)], and four counts of tampering with records [Counts 12, 13, 14, 15 - 4104(a)], and four counts of unlawful use of computer (Counts 19, 20, 21, 22 [7611(a)(1)] not supported by sufficient evidence? Did [the trial court] fail to properly apply the adverse inference due to the Commonwealth's non production of discovery since the documents not produced dealt specifically with the four dental checks, which would have negated any sufficiency of evidence and provided exculpatory evidence for [Appellant]?

2. Were the same verdicts as set forth in question one against the weight of the evidence? Did [the trial court] fail to properly draw or apply the adverse inference due to the Commonwealth's failure to produce discovery that could help the defense, and therefore, result in the verdicts being against the weight of the evidence?

3. Did [the trial court] err in not dismissing the case pursuant to numerous pretrial motions since the Commonwealth failed to produce and/or the records were destroyed of relevant Board of Directors minutes and Supervising Committee minutes and Expense Reports and CEO Reports, which would have demonstrated approval of all dental expenses at issue and which would have been favorable to the Appellant and would have shown all bills, including dental bills in 2004 were reviewed and approved? Was the defense of the Appellant severely prejudiced by the non-production of documents?

4. Did [the trial court] err in allowing the testimony of Tina Wellington since her information was not given to the Appellant until the day before the trial began despite the fact the defense had previously filed six discovery motions?

5. Did [the trial court] err in not dismissing the case based on the double jeopardy clause in Article 1, Section 10 of the Pennsylvania Constitution since the prosecution withheld

evidence and presented false testimony that [Appellant] did not have her raises approved and was not a union member when the Credit Union Board of Director minutes given after numerous motions by present counsel before the second trial reflected the raises and the fact she was a union member? Did [the trial court] err in not dismissing based on prosecutorial misconduct in withholding evidence and/or arguing evidence the prosecution knew was untrue?

(Appellant's Brief, at 6-7).

In her first claim, Appellant alleges that the evidence was insufficient to sustain her conviction because, in part, in her testimony at trial, she denied "any knowledge of these checks." (Appellant's Brief, at 36). Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012) (citations omitted) (emphasis added).

Here, rather than viewing the evidence in the light most favorable to the Commonwealth, Appellant views the evidence in the light most favorable to her and then concludes that it was insufficient to sustain the conviction. (**See** Appellant's Brief, at 35-43). Further, her sufficiency of the evidence claim is, in reality, a claim that the trial court should have credited her witnesses and her testimony, rather than crediting the evidence of the Commonwealth. However, an argument that the finder of fact should not have credited a witness's testimony and should have credited the appellant's testimony goes to the weight of the evidence, not the sufficiency of the evidence. **See Commonwealth v. W.H.M.**, **Jr.**, 932 A.2d 155, 160 (Pa. Super. 2007) (claim that jury should not have believed victim's version of events goes to weight, not sufficiency of evidence); **Commonwealth v. Wilson**, 825 A.2d 710, 713-14 (Pa. Super. 2003) (holding that review of sufficiency of evidence does not include assessment of credibility of testimony; such claim goes to weight of evidence); **Commonwealth v. Gaskins**, 692 A.2d 224, 227 (Pa. Super. 1997) (holding that credibility determinations are made by finder of fact and challenges to those determinations go to weight, not sufficiency of evidence). Accordingly, Appellant's sufficiency of the evidence claim fails.[2]

_____

[2] Appellant also contends that the trial court had agreed to take an adverse inference from the Commonwealth's failure to provide in discovery Supervisory Committee reports, CEO reports, and expense reports for the
*(Footnote Continued Next Page)*

In her second claim, Appellant argues that her conviction was against the weight of the evidence. (*See* Appellant's Brief, at 44-46). Our scope and standard of review of a weight of the evidence claim is also long-settled:[3]

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

*(Footnote Continued)* ───────────────

period in question and failed to do this, thus resulting in Appellant's conviction. (*See* Appellant's Brief, at 38-39, 43). However, Appellant fails to support her contention that the trial court had agreed to make such an adverse inference. Rather, the trial court stated, "[d]epending on the issues developed at [t]rial the fact finder **may** draw a negative inference from the failure to produce certain documents." (Order, 5/28/13, at unnumbered page 1) (emphasis added). Thus, there was no guarantee that the trial court would take such an inference. Further, other than bald statements that these documents "would have exonerated" her (Appellant's Brief, at 39), Appellant has failed to demonstrate that these documents existed, were relevant, and contained any evidence that would have been favorable to her. Thus, this contention lacks merit.

[3] Appellant properly preserved her weight of the evidence claims in a post-trial motion. (*See* Post-Sentence Motion, 7/03/13, at unnumbered pages 3-5).

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted). Lastly, the instant matter was a bench trial, and we have stated that, "[w]e will respect a trial court's findings with regard to the credibility and weight of the evidence [after a bench trial] unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." *J.J. DeLuca Co., Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 410 (Pa. Super. 2012) (citation omitted).

In its opinion denying Appellant's post-sentence motion, the trial court explained that it found the testimony of the Commonwealth's witnesses credible and did not find Appellant's defense credible. (*See* Trial Court Opinion and Order, 10/23/13, at 14-15). We have thoroughly reviewed both the trial court's opinion and the record in this matter and find that the trial court did not commit a palpable abuse of discretion in rejecting Appellant's

weight of the evidence claim. Therefore, Appellant's weight of the evidence claim must fail.

In her third claim, Appellant contends that the trial court erred in not dismissing the case when the Commonwealth failed to produce requested records, including "Board of Directors['] minutes, the Supervisory Committee minutes and reports, the CEO reports and Expense report[s]," because these would have demonstrated that the Credit Union approved the checks, which would have exonerated Appellant. (Appellant's Brief, at 45; *see id.* at 46-52). We disagree.

"[Q]uestions involving discovery in criminal cases lie within the discretion of the trial court and that court's decision will not be reversed unless such discretion was abused." *Commonwealth v. A.G.*, 955 A.2d 1022, 1025 (Pa. Super. 2008) (citation omitted). The Pennsylvania Rules of Criminal Procedure provide that:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule [regarding discovery], the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E). Further, this Court has stated:

> . . . that dismissal of charges is a penalty far too drastic for a prosecutor's violation of discovery rules.

\* \* \*

> Dismissal of criminal charges punishes not only the prosecutor . . . but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Thus, the sanction of dismissal of criminal charges should be utilized only in the most blatant cases. Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

*A.G.*, *supra* at 1025 (quotation marks and citations omitted).

Here, the trial court found that the Commonwealth had produced much of the requested discovery; it further found that some of the requested documents were unnecessary because they concerned the charges that the Commonwealth dropped. (*See* Trial Ct. Op., 10/23/13, at 15-16). The trial court held that there was "no showing of any egregious actions by the Commonwealth," apparently crediting the Commonwealth's explanation that, despite its best efforts, it was unable to obtain the documents in question from the Credit Union. (*Id.* at 18; *see id.* at 16). Lastly, the trial court stated that Appellant "had not set forth just how [she] was prejudiced by the lack of the documents[.]" (*Id.* at 18). We agree.

Appellant fails to point to any evidence that suggests that the Commonwealth either did not look for the documents or withheld the documents. (*See* Appellant's Brief, at 46-53). Further, Appellant's reliance on the testimony of Commonwealth witness Mary Dunne is misplaced.

Dunne did not testify that the Commonwealth did not seek these records, but rather that no one asked her personally for the records and she was not aware if the Commonwealth asked anyone else in her office for them. (*See* N.T. Trial, 6/27/13, at 47-48; Appellant's Brief, at 48-49). In addition, other than bald and speculative statements that the missing documents would have exonerated her, Appellant does not provide any support for her claim that the failure of the Commonwealth to produce the documents prejudiced her. (*See* Appellant's Brief, at 46-53).

Finally, Appellant has not provided any legal support for her claim that dismissal of all criminal charges is an appropriate remedy for a discovery violation. To the contrary, all the cases cited by Appellant support the Commonwealth's contention that dismissal is not the appropriate remedy. (*See* Appellant's Brief, at 50-53; Commonwealth's Brief, at 28-32); *see also Arizona v. Youngblood*, 488 U.S. 51, 57-59 (1988) (where police fail to preserve evidence which might be exculpatory, dismissal is only appropriate where there is showing of bad faith); *Commonwealth v. Burke*, 781 A.2d 1136, 1146 (Pa. 2001) ("where there is no evidence of deliberate, bad faith overreaching by the prosecutor intended to provoke the defendant into seeking a mistrial or to deprive the defendant of a fair trial, the proper remedy for the Commonwealth's failure to disclose exculpatory materials should be less severe than dismissal."); *Commonwealth v. Smith*, 955 A.3d 391, 395 (Pa. Super. 2008) (*en banc*) (reversing dismissal

of charge based upon Commonwealth's discovery violation); ***Commonwealth v. Free***, 902 A.2d 565, 571-74 (Pa. Super. 2006) (reversing dismissal of charges, where the police failed to preserve evidence). Here, as Appellant has failed to demonstrate any egregious activity on the part of the Commonwealth and failed to show that the Commonwealth's failure to provide the missing documents prejudiced her, her claim must fail. ***See A.G.***, ***supra*** at 325.

In her fourth claim, Appellant avers that the trial court erred in allowing the testimony of Tina Wellington, since Wellington gave her statement to the police the day before trial. (***See*** Appellant's Brief, at 53-56). We disagree.

This Court has held that:

> [w]ith regard to evidentiary challenges, it is well established that [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. Serrano***, 61 A.3d 279, 290 (Pa. Super. 2013) (citation and internal quotation marks omitted).

Here, Appellant's argument is undeveloped. Appellant fails to specify the basis for her claim that Wellington's testimony was inadmissible[4] and fails to provide any legal support for her contentions. This Court will not act as counsel and will not develop arguments on behalf of an appellant. *See In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012). When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived. *See* Pa.R.A.P. 2101; *R.D.*, *supra* at 674. Accordingly, we find Appellant's fourth claim waived.

Moreover, Appellant's argument does not appear to be a claim that any portion of Wellington's testimony was inadmissible but rather that the trial court should have excluded her testimony[5] as a sanction for the Commonwealth's late disclosure of her statement, an entirely different issue. (*See* Appellant's Brief, at 53-56). As we earlier discussed, the trial court has

---

[4] We note that it does not appear that Appellant sought to preclude Wellington's testimony in its entirety, but only to preclude those portions of her testimony regarding seeing one of the checks on the printer and putting it in Appellant's office. (*See* N.T. Trial, 6/27/13, at 117).

[5] As noted above, at trial, Appellant only moved to preclude parts of Wellington's testimony, thus any claim that the trial court should have precluded all of her testimony is waived. An appellant cannot raise new legal theories for the first time on appeal. *See* Pa.R.A.P. 302(a); *Commonwealth v. Truong*, 36 A.3d 592, 598 (Pa. Super. 2012) (*en banc*), *appeal denied*, 57 A.3d 70 (Pa. 2012).

the discretion to exclude evidence as a sanction for a discovery violation. *See* Pa.R.Crim.P. 573(E); *see also Burke*, *supra* at 1141.

Here, the evidence in question was not favorable to Appellant, so there is no violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Thus, the only issue is whether there was a violation of Rule 573(B)(1)(b).[6] The Commonwealth does not violate Rule 573(B)(1)(b) when it does not disclose evidence that is not in its possession and of which it was unaware. *See Commonwealth v. Collins*, 957 A.2d 237, 253 (Pa. 2008).

Appellant has not shown that the Commonwealth acted in bad faith or deliberately withheld Wellington's statement until the day before trial. Rather, the record demonstrates that while Wellington spoke to the police in 2010, the police officer did not ask her about seeing one of the checks, and when she was asked, immediately prior to trial, she gave a statement. (*See* N.T. Trial, 6/27/13, at 151-52). Thus, Appellant has not shown that the Commonwealth violated Rule 573 or that the trial court abused its discretion in failing to preclude Wellington's testimony regarding the checks. *See Collins*, *supra* at 253-54 (trial court did not abuse its discretion in failing to preclude inculpatory lab test results not disclosed until second day of trial,

---

[6] Rule 573(B)(1)(b) provides for the mandatory disclosure of inculpatory evidence that "is in the possession or control of the attorney for the Commonwealth." Pa.R.Crim.P. 573(B)(1)(b).

where Commonwealth disclosed evidence on day it obtained it and there was no evidence that it had results earlier). Appellant's claim lacks merit.

In her final claim, Appellant contends that the trial court erred in not granting her motion to dismiss the case on double jeopardy grounds where the Commonwealth committed prosecutorial misconduct by presenting false evidence at Appellant's first trial. (**See** Appellant's Brief, at 56-63). Specifically, Appellant contends that Board of Directors minutes disclosed to Appellant prior to the second trial, contradict testimony at the first trial regarding Appellant's status as a union member and approval of various raises. (**See id.** at 56-57).

"An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*. . . ." **Commonwealth v. Anderson**, 38 A.3d 828, 833-34 (Pa. Super. 2011) (*en banc*) (quotation marks and citations omitted).

The Pennsylvania Constitution provides, in pertinent part, that "No person shall, for the same offense be twice put in jeopardy of life or limb. . . . " Pa. Const. Art. 1 § 10. We have held that:

> . . . double jeopardy protection applies where the prosecution engages in conduct intended to provoke the defendant's motion for mistrial. In addition, the Pennsylvania Supreme Court held that double jeopardy applies in the event of prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. . . .

We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

Thus, the Pennsylvania Supreme Court held that the double jeopardy clause set forth in Article 1, § 10 of the state constitution provides greater protection than its Fifth Amendment counterpart.

*Commonwealth v. Minnis*, 83 A.3d 1047, 1051-52 (Pa. Super. 2014) (*en banc*) (quotation marks, footnote and citations omitted).

Here, the certified record does not include the transcripts from the first trial. The request for transcripts attached to the notice of appeal demonstrates that Appellant only requested that the court recorder transcribe trial transcripts from the instant trial. (**See** Notice of Appeal, 9/05/13, at unnumbered page 3). We have stated "[w]hen the appellant . . . fails to conform to the requirements of [Pa.R.A.P.] 1911 [relating to transcript requests], any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review." *Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007) (citation omitted).

Further, Appellant's motion to dismiss does not include copies of the Board of Directors' minutes in question, and this Court cannot find them in

the certified record. (*See* Motion to Dismiss, 4/12/13, at unnumbered pages 1-10). It is Appellant's responsibility to confirm that the certified record contains all items necessary to ensure that this Court is able to review her claims. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*) (holding that claim that victim's execution of general release barred imposition of restitution was waived where appellant failed to include release in certified record). Thus, we are constrained to find that Appellant has waived her double jeopardy claim.

Moreover, even if Appellant had not waived her double jeopardy claim, it lacks merit. In describing the type of prosecutorial misconduct that would implicate double jeopardy concerns, this Court has stated:

> Prosecutorial misconduct includes actions intentionally designed to provoke the defendant into moving for a mistrial or conduct by the prosecution intentionally undertaken to prejudice the defendant to the point where he has been denied a fair trial. [**Commonwealth v.**] **Smith**, [532 Pa. 177,] 186, 615 A.2d [321,] 325 [(1992)]. The double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant subjected to the kind of prosecutorial misconduct intended to subvert a defendant's constitutional rights. However, **Smith** did not create a *per se* bar to retrial in all cases of intentional prosecutorial overreaching. Rather, the **Smith** Court primarily was concerned with prosecution tactics, which actually were designed to demean or subvert the truth seeking process. The **Smith** standard precludes retrial where the prosecutor's conduct evidences intent to so prejudice the defendant as to deny him a fair trial. A fair trial, of course is not a perfect trial. Errors can and do occur. That is why our judicial system provides for appellate review to rectify such errors. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied. *See* **Commonwealth v. Martorano & Daidone**, 453 Pa. Super. 550, 684 A.2d 179, 184 (1996), *affirmed*[,] 559 Pa. 533, 741

A.2d 1221 (1999). "A fair trial is not simply a lofty goal, it is a constitutional mandate, ... [and][w]here that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity." *Martorano*, 559 Pa. at 539, 741 A.2d at 1223 (quoting *Martorano & Daidone*, 684 A.2d at 184).

*Commonwealth v. Culver*, 51 A.3d 866, 883 (Pa. Super. 2012) (some quotation marks and citations omitted).

In *Smith*, following direct appeal, the defendant discovered that the prosecutor had withheld information regarding a favorable sentencing recommendation given to the prosecution's chief witness and that the prosecution had knowingly withheld exculpatory physical evidence.[7] **See** **Smith**, *supra* at 323.

In *Martorano*, the Pennsylvania Supreme Court held that double jeopardy barred retrial of the defendant where the prosecutor committed misconduct including, "blatantly disregarding the trial court's evidentiary rulings, disparaging the integrity of the trial court in the front of the jury, and repeatedly alluding to evidence that the prosecutor knew did not exist." *Martorano*, *supra* at 1222.

---

[7]At trial, the Commonwealth "excoriated" a Commonwealth witness who testified about the existence of the physical evidence in question. The Commonwealth implied that the witness had fabricated his testimony, presented the testimony of other witnesses which contradicted the testimony, and recommended that the witness be prosecuted for perjury. *Smith*, *supra* at 323.

By contrast, in **Culver**, this Court held that double jeopardy did not bar retrial of the defendant despite prosecutorial misconduct. **See Culver**, **supra** at 883-84. The prosecutor in **Culver** physically and verbally menaced the defendant; attacked the defendant's veracity during closing argument; referred to evidence that did not exist during opening argument; and repeatedly asked leading questions during direct examination of Commonwealth witnesses. **See id.** at 871-72. Although this particular prosecutor had a history of misconduct and while we deplored his actions, we found that the conduct was not so egregious as to bar retrial on double jeopardy grounds. **See id.** at 884. We stated, "[w]e cannot discern a clear intent to deprive Culver of a fair trial where [the prosecutor's] misconduct could largely be explained by his incompetence or mere indifference to the rights of the accused and the decorum of the court, and where there is also no direct evidence to the contrary." **Id.**

Thus, it is evident that the bar is a high one and that for prosecutorial misconduct to prohibit retrial on double jeopardy grounds the prosecutor's conduct must be both egregious and pervasive. To the extent that it can be determined based upon the incomplete record in this matter, Appellant has not come close to meeting this high bar.

Based upon the record and the trial court's opinion, Appellant demonstrates that, prior to the second trial, she, now represented by counsel, sought discovery, and that certain minutes turned over in discovery

showed discrepancies between those minutes and the testimony of various Commonwealth witnesses at the first trial. (*See* Trial Ct. Op., 10/23/13, at 2-7; Motion to Dismiss, 6/13/13, at unnumbered pages 1-10). Appellant has not cited to any evidence which would demonstrate that the Commonwealth deliberately withheld, or was even aware of, the documents prior to the first trial, or that the Commonwealth suborned perjury. (*See* Appellant's Brief, at 56-63). At most, Appellant has demonstrated that, prior to the first trial, while representing herself, she did not receive certain documents that would have been arguably helpful in impeaching some of the Commonwealth's witnesses. This is hardly the type of pervasive misconduct that this Court found to bar retrial in *Smith* and *Martorano*. Appellant's claim that double jeopardy bars retrial in this matter because of prosecutorial misconduct lacks merit. *See Culver*, *supra* at 883.

Lastly, Appellant has not addressed the issue of whether the second trial constituted retrial on the same offense. (*See* Appellant's Brief, at 56-63). Appellant does not dispute that any alleged prosecutorial misconduct only involved charges that the Commonwealth dismissed prior to the second trial. (*See id.*). Appellant has not pointed to, and this Court has not found any case were we have barred retrial based upon prosecutorial misconduct, when such misconduct was unrelated to the charges at the retrial.

In *Commonwealth v. Barber*, 940 A.2d 369 (Pa. Super. 2007), *appeal denied*, 960 A.2d 835 (Pa. 2008), the appellant pleaded guilty to

several summary offenses related to his car dealership. *See Barber*, *supra* at 371-72. Later, the appellant pleaded *nolo contendere* to seventy-one misdemeanor and felony charges also relating to the car dealership. *See id.* at 372. Following the filing of a PCRA petition, the PCRA court found the appellant had received ineffective assistance of counsel, vacated his *nolo contendere* pleas and awarded a new trial. *See id.* The appellant filed a motion to dismiss, arguing that his guilty pleas to the summary offenses precluded retrial on the misdemeanor and felony charges because they all arose out of the same course of conduct. *See id.* at 373, 376-77. This Court found Appellant's attempt to bar the second trial on double jeopardy grounds to be "misguided." *Id.* at 378. We stated:

> Since none of the summary offenses to which Appellant previously pled guilty, and for which Appellant has already been punished by the payment of fines, are the same offenses or lesser included offenses of those nonsummary offenses with which Appellant is presently charged, and since Pennsylvania has expressly abrogated the "same conduct" expansion of double jeopardy protection, the Commonwealth is not barred by constitutional double jeopardy principles from prosecuting Appellant for the currently pending nonsummary charges. Nor is the Commonwealth precluded from punishing Appellant separately for those offenses, if he is convicted.

*Id.* at 378-79 (citation omitted).

While the offenses charged at the second trial arose out of the same course of conduct as those at the first trial, they are not the same offenses. Thus, even if Appellant had demonstrated that the Commonwealth had committed prosecutorial misconduct, her claim would fail. *See id.*

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2014