J-S51039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
EVAN DAVIS :
:
Appellant : No. 2795 EDA 2016

Appeal from the Judgment of Sentence July 25, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005486-2013

BEFORE: BOWES, SHOGAN, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED SEPTEMBER 07, 2017**

Appellant Evan Davis appeals from the judgment of sentence entered
in Philadelphia County after a jury convicted Appellant of third-degree
murder, criminal conspiracy, and related weapons charges. Appellant claims
the trial court erred in denying as frivolous his pretrial motion to bar a retrial
on double jeopardy grounds. After careful review, we affirm.

Appellant was charged with the aforementioned offenses in connection
with the February 6, 2013 shooting death of Kiree Harris ("the victim"). On
that night, Appellant and his brother, Edwin Davis were contacted by
Michelle White, who was romantically involved with Ernest Davis, the brother
of Appellant and Edwin Davis. White told Appellant and Edwin Davis that her

_____

[*] Former Justice specially assigned to the Superior Court.

father, Paul White had been in a physical altercation with a man named Omar Simmons. The Davis brothers agreed to come and fight Simmons.

Shortly thereafter, Appellant and his friend "Hasan" arrived at White's home and began cleaning two semi-automatic pistols, using rubber gloves and towels. Edwin Davis and another unidentified individual arrived approximately twenty minutes later. Michelle White told the Davis brothers to "take care of some business" and directed them to the apartment complex where Simmons lived. N.T. 12/23/13, at 14-15.

The Davis brothers asked Richard Boyle to accompany them to Simmons' apartment. Boyle knocked on Simmons' door as Simmons would not have recognized him. When no one answered the door, the Davis brothers fired multiple gunshots through the door, striking the sleeping victim, who had no involvement in the fight between Paul White and Simmons. The victim died as a result of two gunshot wounds to the torso.

Officers responded to reports of the shooting and investigated the scene of the crime. The next day, Appellant was implicated in the victim's death as Michelle White and Richard Boyle gave statements to the police identifying the Davis brothers as the shooters. As a result of White's statement, police then investigated White's home where they recovered four latex gloves from a wastebasket. The gloves were submitted to the Criminalistics Laboratory for DNA testing.

After Appellant, Edwin Davis, Paul White, and Michelle White were charged in connection with the victim's murder, Michelle White pled guilty to

third-degree murder and conspiracy on December 23, 2013. As a part of this agreement, Michelle White agreed to testify against Appellant and his co-conspirators at a joint trial. While the trial was originally scheduled to commence in September 2014, the case was continued twice: first, by Appellant, on September 8, 2014, and then by Edwin Davis on June 29, 2015. The trial was then rescheduled for June 29, 2015.

Eleven days before trial was set to begin, on June 18, 2015, the prosecutor learned that police had recovered the latex gloves from Michelle White's apartment that were believed to be used by Appellant and his cohort to clean the guns and bullets used to commit the victim's murder. The prosecutor was unaware that the gloves had been recovered as this evidence was not documented in the investigation of the murder scene by the assigned detective, but were recorded by a different officer in a separate crime scene report.

The prosecutor immediately notified defense counsel of this finding and sent her the property receipt and photographs of the gloves. On June 19, 2015, the prosecutor obtained a court order for a sample of Appellant's DNA to determine if the DNA testing of the gloves matched Appellant's sample. Three days before trial was scheduled to begin, on June 26, 2015, the prosecutor received the laboratory report which revealed that there was substantial likelihood that Appellant's DNA was on the gloves.

On June 27, 2015, Appellant filed a motion to exclude the DNA evidence or to grant a continuance. The trial court denied this motion,

declining to exclude the evidence as it found the prosecutor had not deliberately withheld the evidence. In addition, the trial court was reluctant to grant a continuance, which would require a severance of Appellant's case from his co-conspirators' trial. The prosecution opposed Appellant's request for a continuance as the trial court's refusal to continue the entire joint trial would force the Commonwealth to prosecute Appellant and his co-defendants in separate trials.

The trial court denied the motion for a continuance and provided Appellant funding to obtain his own DNA expert. The trial court noted that the Commonwealth faced the risk of having to retry Appellant a second time if the defense expert disagreed with the DNA analysis. Further, the trial court indicated that if Appellant were convicted and subsequently received a contradictory opinion from his DNA expert, he could file a motion for a new trial. The prosecutor agreed with this remedy, asserting that the expert report he received was "such a conservative estimate that [he] would be shocked if another DNA lab disagrees." N.T. 6/29/15, at 14.

On June 29, 2015, Appellant proceeded to a jury trial, at which the Commonwealth presented the testimony of Boyle and Michelle White, who admitted they witnessed Appellant and Edwin Davis commit the murder. Marlietta Cowan also testified for the prosecution, indicating that she saw Appellant and a cohort clean their guns and bullets while wearing latex gloves at Michelle White's home. The trial court permitted the Commonwealth to admit the DNA evidence from the latex gloves. Bryne

Strother, an expert in DNA analysis, had concluded that Appellant's DNA was found on three of the eight samples tested. At the conclusion of the trial, the jury convicted Appellant of third-degree murder, conspiracy, and related firearms charges.

On August 7, 2015, Appellant filed a motion for a new trial based on the assessment of defense DNA expert, Arthur W. Young. After the trial court requested and received an additional report from Young, who opined that the DNA results were inconclusive, the trial court granted Appellant a new trial in an order dated January 4, 2016.

On February 18, 2016, Appellant filed a motion to dismiss the charges and bar retrial based on double jeopardy principles. The trial court held a hearing, at which the prosecutor testified that he was not aware that police had recovered the gloves until June 2015, when he was preparing for trial. He immediately informed defense counsel of this discovery, was able to expedite the DNA testing, and sent the laboratory report to defense counsel when it became available.

After consideration of this testimony, the trial court denied Appellant's motion to dismiss as it found that the delay in obtaining the DNA testing was attributable to human error and further noted that the prosecutor made a good faith effort to rectify the situation once the error was discovered. As the trial court found that the prosecutor did not attempt to deny Appellant a fair trial, it reasoned that Appellant's motion was frivolous. Notes of Testimony (N.T.), 7/18/16, at 163. Appellant did not appeal this finding of

frivolousness by filing a Petition for Review in this Court along with a request for a stay. *See Commonwealth v. Orie*, 610 Pa. 552, 22 A.3d 1021, 1027 (2011) (providing that a defendant may obtain preliminary appellate review of a trial court's finding that the defendant's pretrial double jeopardy claim is frivolous by filing a petition for review in the Superior Court along with a request for a stay).

Instead of seeking preliminary appellate review of the denial of his motion to bar retrial, Appellant proceeded to trial at which a jury again convicted Appellant of third-degree murder, conspiracy, and related weapons charges. On the same day, the trial court sentenced Appellant to twenty to forty years' incarceration on the murder charges and concurrent sentences on the remaining charges. Both parties filed motions for reconsideration, which the trial court denied. This timely appeal followed.

Appellant's sole claim on appeal is whether the trial court erred in denying his pretrial motion to bar a retrial on double jeopardy grounds.[1] Appellant invokes the protection of both the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10

---

[1] Although Appellant did not seek preliminary appellate review of the trial court's finding that his motion to bar a retrial on double jeopardy grounds was frivolous, he is entitled to appellate review on the merits of his claim on direct appeal following retrial. *Commonwealth v. Brady*, 510 Pa. 336, 345, 508 A.2d 286, 291 (1986), holding modified by *Orie*, 610 Pa. 552, 22 A.3d at 1025.

of the Pennsylvania Constitution, which apply to bar a mistrial where the "prosecution engages in conduct intended to provoke the defendant's motion for mistrial." *Commonwealth v. Minnis*, 83 A.3d 1047, 1051 (Pa.Super. 2014) (citing *Commonwealth v. Starks*, 490 Pa. 336, 341, 416 A.2d 498, 500 (1980)).

In addition, our Supreme Court has held the double jeopardy clause in Article I, Section 10 of the Pennsylvania Constitution provides greater protection than its federal counterpart, finding

> the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

*Minnis*, 83 A.3d at 1052 (quoting *Commonwealth v. Martorano*, 559 Pa. 533, 537, 741 A.2d 1221, 1222 (1999)).

Appellant concedes that the trial court was correct in finding that the prosecution did not intentionally withhold the DNA evidence and the delay in obtaining the DNA testing was attributable to human error. He does not contest the trial court's finding that the prosecution acted in good faith in trying to rectify the situation with prompt DNA testing of the evidence. Nevertheless, Appellant claims that it was "blatantly intentional" for the prosecutor to contest his motion for continuance to review the DNA evidence, "knowing full well that forcing Appellant to trial without affording him the opportunity to consult with his own expert, was blatant error."

Appellant's Brief, at 11. Moreover, Appellant claims that the Commonwealth should not have objected to his motion for a new trial and demanded a hearing, asserting that the jury should have been the arbiter of the credibility of his defense expert.

However, we do not see how the prosecutor's disagreement with Appellant's legal arguments constitutes misconduct that would warrant dismissal of the charges against Appellant. Our Supreme Court has emphasized that "dismissal of charges is an extreme sanction that should be imposed sparingly… only in cases of blatant prosecutorial misconduct." *Commonwealth v. Burke*, 566 Pa. 402, 416, 781 A.2d 1136, 1144 (2001). Further, the Supreme Court provided that:

> Dismissal of criminal charges punishes not only the prosecutor ... but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Thus, the sanction of dismissal of criminal charges should be utilized only in the most blatant cases. Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

*Id*. (citation omitted).

In this case, the prosecution did not engage in misconduct but merely contested Appellant's legal arguments. The prosecution objected to Appellant's motion for continuance as this was the third continuance request from the defense in a joint murder trial with three defendants. As the trial

court would not continue the cases of Appellant's co-defendants, any continuance would require the severance of Appellant's case and necessitate multiple trials. Moreover, the prosecutor expressed his belief that it was unlikely that another DNA expert would reach a different result than the laboratory's conservative analysis.

Thus, in contesting the motion for continuance, the prosecutor chose to proceed with the risk of having to try Appellant twice over severing Appellant's case from his co-defendants, which would guarantee multiple trials. The trial court agreed with the Commonwealth and denied Appellant's request for a continuance, which it found unnecessary to assure that Appellant received a fair trial. The trial court provided Appellant funding for a defense expert to review the DNA evidence and assured Appellant he could move for a mistrial if the retained expert reached an opinion contradicting the laboratory report identifying Appellant's DNA on the gloves.

Similarly, while Appellant contends that the Commonwealth "demanded" a hearing on his motion for a new trial, it was necessary for the trial court to schedule a hearing to require Appellant to prove he was entitled to this remedy. As the trial court found that the initial report of Appellant's DNA expert did not provide sufficient information to allow the trial court to decide the motion at the hearing, the trial court ordered Appellant's expert to provide a supplemental report. After reviewing this document in which the defense expert opined that the DNA testing was "inconclusive," the trial court granted Appellant's motion for a new trial.

Viewing the record, we reject Appellant's claim that the prosecution engaged in misconduct intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. Accordingly, we conclude that the trial court did not err in denying Appellant's motion to bar retrial on double jeopardy grounds.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2017