**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RANDALL DOUGLAS BROOKS | : | |
| | : | |
| Appellant | : | No. 1546 MDA 2024 |

Appeal from the PCRA Order Entered September 17, 2024
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000141-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RANDALL DOUGLAS BROOKS | : | |
| | : | |
| Appellant | : | No. 1547 MDA 2024 |

Appeal from the PCRA Order Entered September 17, 2024
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001515-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RANDALL DOUGLAS BROOKS | : | |
| | : | |
| Appellant | : | No. 1548 MDA 2024 |

Appeal from the PCRA Order Entered September 17, 2024
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000568-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

|  |  |  |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDALL D. BROOKS | : | |
| | : | |
| Appellant | : | No. 1549 MDA 2024 |

Appeal from the PCRA Order Entered September 17, 2024
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001927-2010

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RANDALL DOUGLAS BROOKS | : | |
| | : | |
| Appellant | : | No. 1550 MDA 2024 |

Appeal from the PCRA Order Entered September 17, 2024
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0002130-2010

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.*

MEMORANDUM BY LAZARUS, P.J.:          **FILED: MAY 27, 2026**

Randall Douglas Brooks appeals from the order, entered in the Court of Common Pleas of Centre County, denying, following a hearing, his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.   After careful consideration, we conclude that the *ex parte* communications between the lead prosecutor and trial judge in Brooks'

---

* Former Justice specially assigned to the Superior Court.

attempted murder trial amounted to structural error that denied him his right to a fair trial. Thus, we reverse and remand for a new trial.

This appeal concerns *ex parte* communications that then-District Attorney of Centre County, Stacy Parks Miller, Esquire, initiated with the Honorable Bradley P. Lunsford during Brooks' 2012 trial for attempted murder causing serious bodily injury and related crimes. Brooks' charges were brought in connection with an incident in which he "pulled up alongside of a vehicle being driven by a Matthew Ross and fired three shots into the Ross vehicle, one of which struck Mr. Ross in the shoulder." Trial Court Opinion, 9/17/24, at 1. The trial court opined that Brooks "was angered by the ending of his romantic relationship with [] Jessica Rooney [] and her subsequent relationship with Mr. Ross." *Id.* The remaining charges[1] in the case stemmed from Brooks allegedly stalking and harassing Rooney and Ross, both prior to

---

[1] The jury found Brooks guilty of the following charges on the five separate informations: [No. CP-14-CR-1927-2010] two counts of aggravated assault, 18 Pa.C.S.A. §§ 2702(a)(1), (a)(4), one count each of attempted criminal homicide, *id.* at §§ 2501, 903, stalking, *id.* at § 2709.1, possession of an instrument of crime, *id.* at § 907(a), and recklessly endangering another person, *id.* at § 2705; [No. CP-14-CR-2130-2010] two counts of intimidation of witness/victim, *id.* at §§ 4952(a)(2), (a)(3); [CP-14-CR-0568-2011] one count each of intimidation of witness/victim, stalking, *id.* at § 2709.1, and harassment, *id.* at § 2709(a)(7); [CP-14-CR-1515-2011] one count each of aggravated jury tampering, 42 Pa.C.S.A. § 4583.1, conspiracy-aggravated jury tampering, 18 Pa.C.S.A. § 4583.1, solicitation to commit perjury, *id.* at §§ 4901, 902, and two counts of solicitation to commit tampering/fabricating physical evidence; [CP-14-CR-0141-2012] two counts of intimidation of witness/victims false/misleading testimony, *id.* at §§ 4952(a)(2), (a)(3), and one count of harassment-communicates lewd/lascivious/threatening or obscene words, *id.* at. § 2709(a)(4).

and after the shooting, and attempting to avoid criminal culpability for those crimes. *See id.*

Brooks proceeded *pro se* throughout his jury trial, with appointed standby counsel. Brooks was convicted on all counts. Judge Lunsford sentenced Brooks to an aggregate term of 36¼ to 73 years of imprisonment. On direct appeal, this Court affirmed the convictions but vacated Brooks' judgment of sentence for attempted murder causing serious bodily injury and remanded for resentencing, concluding the jury had failed to make the requisite factual finding with regard to serious bodily injury. *See Commonwealth v. Brooks*, 122 A.3d 1120 (Pa. Super. 2015) (Table).

Upon resentencing, the trial court imposed an aggregate term of 28-56 years of incarceration. Brooks filed a post-sentence motion challenging the grading of his stalking offense. The trial court[2] granted Brooks' motion and resentenced him to 27¼ to 54½ years' incarceration. Brooks filed another post-sentence motion that was denied by operation of law. We dismissed Brooks' ensuing appeal, which raised a discretionary aspect of sentencing issue, due to counsel's appellate briefing deficiencies. *See Commonwealth v. Brooks*, 195 A.3d 1051 (Pa. Super. 2018) (Table). Brooks did not seek allowance of appeal with our Supreme Court.

---

[2] Judge Lunsford retired from the bench in 2015. Brooks was resentenced in 2016 by the Honorable Johnathan Grine.

- 4 -

Meanwhile, on December 6, 2018, the Disciplinary Board of the Supreme Court of Pennsylvania (Board) filed a report and recommendation in relation to charges leveled in 2017 by the Office of Disciplinary Counsel alleging Attorney Parks Miller violated the Rules of Professional Conduct by, *inter alia*, engaging in *ex parte* communications with judges, including Judge Lunsford. Thereafter, on September 27, 2019, Brooks filed a timely *pro se* PCRA petition. Counsel was appointed and subsequently amended the petition: (1) arguing that direct appeal counsel was ineffective for failing to preserve a challenge to the discretionary aspects of Brooks' sentence; and (2) seeking substantive relief by alleging a constitutional violation that so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.[3] **See** 42 Pa.C.S.A. § 9543(a)(2)(i). As to the latter issue,

---

[3] Subsection 9543(a)(2)(i) delineates PCRA eligibility, in relevant part, as follows:

(a)   General rule.--To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

                    ***

    (2) That the conviction or sentence resulted from one or more of the following:

        (i)      A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process

*(Footnote Continued Next Page)*

Brooks contended that Attorney Parks Miller and Judge Lunsford violated his constitutional rights by engaging in *ex parte* communications during his prosecution. **See** PCRA Petition, 9/27/19 at 10.

The PCRA court outlined the facts underlying Brooks' substantive claim thusly:

> [T]he circumstances concerning these communications involved, *inter alia*, allegations of [Attorney Parks Miller's] misconduct which occurred during cases which had been concluded prior to the Board proceedings, including **Commonwealth v. Barry Grove**, CP-14-CR-873-2013 and **Commonwealth v. Jalene McClure**, CP-14-CR-1778-2012.[4] Following a review of allegations of *ex parte* communication in these and several other cases, the . . . Board concluded that the conduct of [Attorney Parks Miller] warranted the suspension of her law license for a period exceeding one year.

PCRA Opinion, 5/9/22, 2-3.[5] Thereafter, the PCRA court noted the **McClure** court determined that the defendant failed to establish prejudice stemming from the *ex parte* communications so "as to warrant the dismissal of the charges against [her]." **Id**. at 4 (quoting **McClure** Order, 12/22/16, at 1-2,

_____

> that no reliable adjudication of guilt or innocence could have taken place.

42 Pa.C.S.A. §§ 9543(a)(2)(i).

[4] Both McClure's And Grove's trials took place after Brooks' trial. However, the *ex parte* communications between the trial judge and DA Parks Miller in Brooks' case did not come to light until "the development of a factual record in the **Grove** case." PCRA Opinion, 4/28/22, at 4; **see infra** at 7.

[5] The PCRA court essentially adopted the first eight pages of its former PCRA opinion from May 2022.

vacated for lack of jurisdiction, ***Commonwealth v. McClure***, 172 A.3d 668 (Pa. Super. 2017)).[6] However, notably, in the ***McClure*** matter, "no definitive evidence demonstrating that the communications between ADA Foster[, the prosecutor in McClure's trial,] and Judge Lunsford concern[ing] the ***McClure*** matter was produced." ***See*** PCRA Court Opinion, 5/9/22, at 4, citing Order Dismissing Motion to Preclude Retrial in ***McClure*** (CP-14-CR-1778-2012), 12/22/16, at 1.[7]

_____

[6] In ***McClure***, a panel of this Court vacated the defendant's judgment of sentence due to the trial court's improper admission of evidence that our Court determined did not amount to harmless error. Thus, any issue regarding the *ex parte* communications between the ADA and Judge Lunsford was rendered moot by the grant of a new trial. Similarly, in ***Commonwealth v. Grove***, 170 A.3d 1127 (Pa. Super. 2017), the defendant's claim of *ex parte* communications between Judge Lunsford and the prosecutor, which only involved sentencing, was rendered moot because the PCRA court granted Grove a new sentencing proceeding on other grounds.

[7] The PCRA judge in the instant matter also quoted the following portions of the opinion of the trial judge who ruled on the defendant's motion to preclude retrial in ***McClure***:

> [T]he communication devices used by Lunsford, Foster, Parks Miller and others in the District Attorney's Office are no longer in existence. When Lunsford returned his phone to Centre County to secure a new phone, an investigation revealed that it had been "set back to factory settings," Foster's phone was turned over to Parks Miller. Parks Miller could not remember if she turned her own phone in[,] but denied knowing where her phone was currently or where Foster's phone was. All of these phones were wiped clean, destroyed, or otherwise made unavailable after the issue of the texting between Lunsford and the District Attorney's Office had been raised by defense counsel.

***Id.*** at 5 (citation omitted); ***id.***, 5/9/22, at 3-4.

The PCRA court further elucidated,

> In the course of the development of a factual record in the ***Grove*** case, . . . an affidavit was taken from Maggie Miller, a Centre County Court Reporter[,] concerning [Brooks'] trial[.] . . . Ms. Miller testified that "during a recess in trial in the instant matter, . . . Judge Lunsford told her that he and [Attorney Parks] Miller were texting one another. According to [the affiant], during the break Judge Lunsford stated . . . that [Attorney Parks] Miller was "bitching to him" in text messages about the way [he] was handling some objections and handling the trial. [The affiant continued] that she was disgusted by what Judge Lunsford had revealed to her and approached [Judge] Lunsford's secretary, Joan Parsons[,] who informed her that [Judge] Lunsford would regularly bring his cell phone to the bench and that Ms. Parsons also viewed it as a problem. Thus[,] it is fair to conclude that in the instant case there were *ex parte* text communications between the District Attorney and the trial judge and that at least some of those communications involved the trial of [Brooks].

PCRA Opinion, 5/9/22, at 4-5 (cleaned up).[8]

Following an evidentiary hearing, the PCRA court denied relief on the merits of Brooks' substantive claim, but granted his request for *nunc pro tunc* relief. Specifically, the court ordered,

> the petition . . . for Post-Conviction Collateral Relief in the nature of a request for a new trial is DENIED. The PCRA petition . . . in the nature of a request for reinstatement of his right to appeal is GRANTED and his right to file a direct appeal is REINSTATED *nunc pro tunc*.

Order, 4/29/22 (some capitalization adjusted). Notably, the PCRA court neglected to inform Brooks that he had thirty days to file a direct appeal, and Brooks did not exercise his *nunc pro tunc* right to file that appeal. Rather, he

---

[8] Brooks attached a copy of Maggie Miller's affidavit to his PCRA petition as "Exhibit A."

appealed to this Court from the order denying his PCRA petition—challenging only the portion of the order denying his claim for substantive PCRA relief. We quashed the appeal, concluding that the substantive portions of the PCRA court's ruling were a nullity pursuant to **Commonwealth v. Harris**, 114 A.3d 1 (Pa. Super. 2015), and **Commonwealth v. Miller**, 868 A.2d 578 (Pa. Super. 2005), which collectively held that the PCRA court lacks jurisdiction to rule on the remaining PCRA claims once it reinstates direct appeal rights.[9] **See Commonwealth v. Brooks**, 305 A.3d 962 (Pa. Super. 2023) (Table). Without providing any guidance as to the state of Brooks' reinstated direct-appeal rights, we concluded, "the ruling Brooks wishes to challenge via the instant appeal is a nullity." **Id**. at *5.

Following our decision, and potentially confused by the procedural posture of the matter, Brooks still did not file a *nunc pro tunc* direct appeal. Instead, on February 20, 2024, he filed the instant PCRA petition reviving the subsection 9543(a)(2)(i) claim regarding the alleged *ex parte* communications

---

[9] This Court has explained that "although the PCRA court may not properly review the merits of the substantive claims when direct appeal rights have been violated, that court's review will serve the evidentiary purpose of completing the record for appellate review." **Harris**, 114 A.3d at 6 n.4 (cleaned up) (internal quotation and citation omitted). The **Harris** Court continued, "[t]hus, after [a defendant's] direct appeal rights have been exhausted or extinguished and his judgment of sentence becomes final, [the defendant] may seek collateral relief on grounds previously raised; the PCRA court may use the already developed evidentiary record and may supplement that record as it sees fit." **Id**.

between Attorney Parks Miller and Judge Lunsford.[10]  In that petition, Brooks once again averred that the communications amounted to "constitutional violations [that] were structural violations affecting the very framework of the trial itself and[, therefore,] defy [a] harmless error/prejudice analysis."  PCRA Petition, 2/20/24, at 33.

After a hearing, the PCRA court ratified its prior determination and denied relief.  Again, it reasoned:

> We have reviewed the lengthy transcribed record of the trial in this case.  In our view, **Judge Lunsford navigated the shoals** between a vigorous and sometimes petulant prosecutor and an untrained *pro se* litigant **with impartiality**.  We are unable to discern any evidence of an improper outside influence, let alone one that proved detrimental to the defendant.  In fact, **Judge Lunsford dealt with the defendant's legal missteps with considerable patience and equity.  We can find no evidence of bias in either his rulings or his charge to the jury**.

*See* PCRA Opinion, 9/16/24, at 8 (quoting PCRA Opinion, 5/9/22, at 6-7) (emphases added).

---

[10] Considering the irregular procedural posture this case presents, we find that Brooks' judgment of sentence became final on October 5, 2023, thirty days after his direct appeal was quashed and where the court failed to properly inform Brooks of the timeframe within which to file his *nunc pro tunc* direct appeal.  Hence, the instant petition was timely filed within one year of the date the judgment of sentence became final under the PCRA.

These timely appeals[11] followed. Brooks presents the following issues for our consideration:[12]

> (1) Whether the trial court erred as a matter of law when it denied [Brooks' PCRA] petition by utilizing [a] "harmless error" analysis despite the PCRA court's factual finding that there were *ex parte* text message communications exchanged between the Centre County District Attorney and the trial judge during trial in the instant matter and that "at least some" of this *ex parte* communication involved the trial of [Brooks]?
>
> (2) Whether the trial court erred as a matter of law when it denied [Brooks' PCRA] claim that his conviction resulted from a violation of the [Pennsylvania] Constitution . . . or the [Federal] Constitution or laws of the United States which, in the circumstances of the instant case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place where the PCRA court concluded there were *ex parte* text message communications between the Centre County District Attorney and the trial judge during trial in the instant matter and that "at least some" of this *ex parte* communication involved [Brooks'] trial[?]

Appellant's Brief, at 7.

This Court reviews the denial of PCRA relief "to determine whether the record supports the PCRA court's findings and whether its order is free of legal

---

[11] In compliance with **Commonwealth v. Walker,** 185 A.3d 969 (Pa. 2018), Brooks filed separate notices of appeal, one for each docket number, from the PCRA court's order denying relief. **See also Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (en banc) (appeal not quashed under **Walker** where appellant filed multiple notices of appeal, each listing multiple lower court docket numbers, because appellant filed appropriate number of notices of appeal). On March 3, 2025, we granted Brooks' motion to consolidate the five appeals for briefing and disposition. **See** Pa.R.A.P. 513.

[12] The PCRA court did not order Brooks to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

error." ***Commonwealth v. Min***, 320 A.3d 727, 730 (Pa. Super. 2024). We review the PCRA court's legal determinations *de novo*, but we are bound by its "credibility determinations, when supported by the record[.]" ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa. Super. 2020). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). An appellant has the burden to persuade this Court "that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa. Super. 2019) (citation omitted). As Brooks is asserting relief pursuant to subsection 9543(a)(2)(i), he must demonstrate that the alleged violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(1).

Brooks contends that the PCRA court erred when it employed a harmless error analysis in denying his petition. Specifically, Brooks argues that because the *ex parte* communications between Judge Lunsford and then-DA Parks Miller constituted a "structural defect in the constitution of the trial mechanism," such structural errors "defy analysis by harmless error standards." Appellant's Brief, at 30-31. We agree.

A structural error is a "constitutional deprivation[] . . . affecting the framework within which [a] trial proceeds, rather than simply an error in the trial process itself." ***Arizona v. Fulminante***, 499 U.S. 279, 310 (1991).

- 12 -

Because it is well established that "[j]udicial bias is a violation of due process[,]" *Commonwealth v. McLaughlin*, 240 A.3d 980, 983 (Pa. Super. 2020) (citation omitted), under the specific facts of this case, we conclude that Brooks should be afforded PCRA relief and granted a new trial.

Although we are not privy to the actual content of the *ex parte* communications between then-DA Parks Miller and Judge Lunsford, the sheer likelihood of bias on the part of the trial judge, who admitted to the communications, is simply "too high to be constitutionally tolerable." *Williams v. Pennsylvania*, 579 U.S. 1, 4 (2016). At the very least, we have evidence that the prosecutor complained to the trial judge, *during Brooks' trial*, about the way the judge was handling objections and the trial in general. *See* Commonwealth's Brief, at 2 ("The evidence demonstrated that the trial judge told a court reporter that the former district attorney was sending him text message[s] during the trial which complained about the judge's evidentiary rulings in favor of the Defendant."); *id.* (PCRA court made finding former district attorney did have *ex parte* communication with trial judge "during the instant trial, and that at least some of those [text] messages involved the trial"). However, even without the specifics of the text messages exchanged between the prosecutor and trial judge, as an objective matter the probability of unfairness and bias is simply too great under the circumstances. *See Williams*, *supra* at 16 ("Both the appearance and reality of impartial

justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself.").

In **Commonwealth v. McClure**, 172 A.3d 668, 689 (Pa. Super. 2017), our Court acknowledged the fact that *ex parte* communications:

> Can extraneously influence decisions by introducing information outside the court record, and can do so unfairly because the communications are not shared with all participants. *Ex parte* communications[,] thus[,] are widely forbidden as a matter of procedure, due process, and ethics, as they deprive a litigant of the right to a fair trial before an impartial tribunal.

*Id.* at 689 (citations omitted). Therefore, even though the PCRA court believed that Judge Lunsford "navigated the shoals between a vigorous and sometimes petulant prosecutor and an untrained *pro se* litigant with impartiality" and "dealt with [Brooks'] legal missteps with considerable patience and equity, " PCRA Opinion, 9/17/24, at 8 (quotation omitted), that is not the proper focus of our constitutional inquiry.[13] **See In re Schlesinger,**

---

[13] We also cannot ignore the multiple times that Brooks' direct appeal rights were forfeited due to counsel's inartful briefing, counsel's two-time failure to file an appeal following the reinstatement of Brooks' appellate rights, and the PCRA court's failure to include the requisite 30-day appeal period notice in its order granting Brooks *nunc pro tunc* relief. **See Commonwealth v. Brooks**, 195 A.3d 1051 (Pa. Super. 2018) (Table) (dismissing appeal of discretionary aspects of sentence due to counsel's failure to include Pa.R.A.P. 2119(f) statement); **id.**, 305 A.3d 962 (Pa. Super. 2023) (Table) (quashing, for lack of jurisdiction, Brooks' appeal from PCRA court's order reinstating his direct appeal rights, but also ruling on Brooks' remaining PCRA claim regarding *ex parte* communications at issue in current appeal). The fact that our Court quashed Brooks' counseled appeal from the order granting him the right to appeal *nunc pro tunc* comes dangerously close to *per se* ineffectiveness where the claim would have, most likely, resulted in a new trial on direct appeal
*(Footnote Continued Next Page)*

172 A.2d 835, 840-41 (Pa. 1961) ("This Court has said . . . that '[e]very procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.'") (citation omitted).

In **Commonwealth v. Bradley**, 459 A.2d 733 (Pa. 1983),[14] our Supreme Court explicitly overruled the legal conclusion set forth in **Argo v. Goodstein**, 228 A.2d 195 (Pa. 1967), that **all** *ex parte* communications between a judge and jury in the absence of counsel, "no matter how

_____

*without* a harmless error analysis. **See Commonwealth v. Issac**, 205 A.3d 358, 365-66 (Pa. Super. 2019), citing **Weaver v. Massachusetts**, 582 U.S. 286 (2017) (absence of harmless error for purposes of direct appeal of structural violation does not equate to presumed prejudice on collateral review).

[14] Although the *ex parte* communications in **Bradley** took place between a trial court and jury, the Supreme Court disapproved the broad language requiring reversal in civil cases without first finding prejudice, and applied the rule to criminal cases. **See id.** at 734. Our Supreme Court has defined the term *ex parte* as:

On one side only; by or for one party; done for, in behalf of, or on the application of, one party only. A judicial proceeding, order, injunction, etc., is said to be *ex parte* when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by[,] any person adversely interested.

**Commonwealth v. McCullough**, 230 A.3d 1146, 1158 n.3 (Pa. Super. 2020) (citation omitted). The rule regarding *ex parte* communications applies equally whether it involves communications between the judge and a jury or between a judge and lawyer concerning a pending or impending matter. **See** Code of Judicial Conduct, Rule 2.9(A) ("A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter[.]").

innocuous," require a new trial, "even in the absence of prejudice to either party." **Bradley**, 459 A.2d at 736. Therein, the Court "adopt[ed] a [new] rule requiring [a] **reasonable likelihood of prejudice** [to apply] . . . to all jury litigation." **Id.** at 739 (emphasis added). Notably, however, the **Bradley** Court qualified its holding by stating that "[w]e do, however, remind the trial bench that failure to maintain an accurate and reviewable contemporaneous record of all instructions and [*ex parte*] communications between the court and a jury **may force an implication of prejudice where arguably none exists**." **Id.** (emphasis added). **See also Bruckshaw v. Frankford Hosp. of Phila.**, 58 A.3d 102, 114 n.8 (Pa. 2012) (recognizing **Bradley** Court "warned the trial bench that 'failure to maintain an accurate and reviewable contemporaneous record of . . . communications between the court and a jury may force an implication of prejudice where arguably none exists'").[15]

Here, not only do we lack an "accurate and reviewable contemporaneous record of" Judge Lunsford and former-DA Parks Miller's *ex parte*

---

[15] We would be remiss if we did not mention, as well, the interplay of Rules of Professional Conduct 3.5(a)-(b) and Code of Judicial Conduct, Canons 1.2, 2.9 (A)(1)(b) & 4(b), with the instant matter. These Rules and Canons provide a window through which to view the floor of acceptable conduct on the part of both lawyers and judges. These are absolute proscriptions against *ex parte* conduct, except in the most ministerial circumstances and, even there, disclosure must be made to the defendant. **See McClure**, 172 A.3d at 689-90 ("In Pennsylvania, judges are prohibited from receiving *ex parte* communications by the Code of Judicial Conduct, and lawyers are prohibited from sending *ex parte* communications to a judge by the Rules of Professional Conduct.").

communications, but the facts also bear out that neither the prosecutor nor the trial judge disclosed these text messages, which occurred *during* Brooks' actual trial, until *years after* Brooks was sentenced.  **Cf. Commonwealth v. Carpenter**, 725 A.2d 154 (Pa. 1999) (judge informed defense counsel, **in chambers and on record**, he talked to Commonwealth attorney prior day on procedural issue; defendant did not claim prejudice and Court held it was **not an *ex parte* communication**); **Barnyak**, **supra** at 44 (with no citation to authority, Court found defendant's claim of improper *ex parte* communication **prior to trial**, in absence of evidence of influence, not basis for new trial);[16] **Grove**, **supra** (**claim found moot** where defendant's claim of *ex parte*

---

[16] In **Barnyak**, the trial court denied the defendant-wife's motions to quash a subpoena and for a protective order.  639 A.2d at 44.  On appeal, the defendant-husband argued that the court's disposition of the motions was "inconsistent" with the holding of **Commonwealth v. Hatfield**, 593 A.3d 1275 (Pa. 1991), where the Supreme Court held that when a subpoena to testify has been challenged and no privilege to avoid testifying exists, whether "to force the unwilling spouse to give evidence" is a discretionary question for the trial court.  **Id.** at 44.  Related to this claim, the defendant contended that "*ex parte* communications transmitted from the Commonwealth's attorney to the trial judge **prior to trial** 'may have convinced the court to decide this case contrary to the decision in **Hatfield**.'"  **Id.** (emphasis added).  In disposing of the *ex parte* communications issue on appeal, our Court stated, **with absolutely no citation to authority**, "We find no evidence in the record that the trial judge was influenced.  Therefore, even if the *ex parte* communications were improper, in the absence of evidence of influence, there is no basis for the grant of a new trial."  **Id**.  Without any support, we cannot conclude that this decision supports the PCRA court's ruling.  Moreover, **Grove**, which relies upon **Barnyak** to support its decision that there must be evidence that the trial judge was influenced in order to grant a new trial, is similarly flawed.  **Id.** at 9-10, 17-18.

communications between judge and prosecutor could have only affected sentencing and new sentence hearing had been ordered). Moreover, unlike the case in **Grove** and **McClure**, we have more than mere speculation regarding the nature of the communications between Judge Lunsford and DA Parks Miller that occurred **during the criminal trial in the matter**. Those communications involved actual trial matters, or, more specifically, were discussions regarding the way the trial judge was ruling on objections— structural errors "affecting the framework within which the trial proceeds." **Arizona**, **supra** at 310.

As advised by the **Bradley** Court, in this instance where the trial judge "fail[ed] to maintain an accurate and reviewable contemporaneous record of [its *ex parte*] communications," we may imply prejudice even "where arguably none exists." **Id.**, 459 A.2d at 739. Under the instant facts, it is undisputed that Brooks' due process rights were violated and the *ex parte* communications between the prosecutor and trial judge constitute structural error. Thus, Brooks is entitled to a new trial.[17]

---

[17] Instantly, the PCRA court intimated that this Court could not remand for a new trial due to Double Jeopardy concerns—but was forced to acquit and discharge Brooks—because his claim is one of prosecutorial misconduct. **See** PCRA Court Opinion, 9/27/24, at 8. However, Brooks' PCRA counsel clearly indicated that his claim is one of "structural errors which implicates the very foundation of the independence and constitutionality of the tribunal itself," not prosecutorial misconduct. PCRA Hearing, 3/28/22, at 49. Thus, jeopardy would not attach. **See Commonwealth v. Minnis**, 83 A.3d 1047, 1051-53 (Pa. Super. 2014) (compiling cases where this Court remanded for new trial
*(Footnote Continued Next Page)*

Order reversed. Case remanded for new trial. Jurisdiction relinquished.[18]

Stevens, PJE, joins the Memorandum.

Bowes, J., files a Dissenting Memorandum.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/27/2026

---

and, on remand, trial court determined that prosecutorial misconduct had risen to prosecutorial overreach, but double jeopardy barred retrial*).*

[18] In reviewing whether these actions on the part of the prosecutor and the trial judge are structural violations of due process, we are mindful of the Rules and Canons already cited. **See supra** n.14. In light of the absolute prohibition against *ex parte* communications, the blatant disregard for the ethical rules governing the conduct of the two parties whose responsibility it is to ensure a trial that comports with due process is both abhorrent and violative of due process. This Court cannot allow a verdict reached under these circumstances to stand; to do so would render us complicit in the bad acts of both the prosecutor and the trial judge.